## LEWIS PUBLISHING COMPANY v. WYMAN.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 179. Argued March 11, 1913.—Decided May 12, 1913.

The admission of a magazine to second-class mail privileges on the petition of the owners made pending a suit to enjoin the enforcement of an order excluding the magazine from such privileges renders the contentions of plaintiff moot and it is no longer in a position to ask for an injunction.

When the question involved in a bill becomes moot, the court should not retain the bill in order to determine plaintiff's liability on a bond, it not appearing in this case that plaintiff is in any danger from an action to enforce the bond.

A suit, which has become moot, will not be retained in order to determine appellant's liability on bonds, when there is nothing in the record on which the rights of the parties may be adjudicated.

A suit, which has become moot, will not be retained in order to secure an accounting for amounts paid after its commencement, when it appears on the face of the bill that plaintiff in order to recover far larger amounts paid prior to the commencement of the suit, must bring an action at law in which all amounts paid could be included.

An order made by the Postmaster General admitting a magazine to second-class mail privileges on certain conditions, made pending a suit to enjoin an order excluding the magazine, is a matter of administration, and affords no ground for relief in the suit for injunction against enforcing the order of exclusion, or for retaining that suit after it has become moot by reason of such order.

182 Fed. Rep. 13, affirmed.

THE facts are stated in the opinion.

Mr. Shepard Barclay, with whom Mr. P. H. Cullen and Mr. Thos. T. Fauntleroy were on the brief, for appellant.

Mr. Solicitor General Bullitt for appellees.

MR. JUSTICE PITNEY delivered the opinion of the court.

This action was commenced by the appellant in the month of March, 1907, in a state court in Missouri, and was removed, on the application of the defendants, now respondents, into the Circuit Court of the United States. The plaintiff's petition averred that it was and for more than three years last past had been a corporation organized under the laws of South Dakota and doing business in the State of Missouri, operating a publishing plant at Winner Station, a sub-station of the St. Louis Postoffice; that the defendants were respectively postmaster and assistant-postmaster of St. Louis; that one of the publications issued, printed and circulated by the plaintiff was called the "Woman's Magazine," a monthly publication issued periodically to hundreds of thousands of subscribers, and admitted many years before by the Postoffice Department as second-class mail matter at the St. Louis Postoffice; that differences had arisen between the plaintiff and the defendants and the Postoffice Department respecting the right of the plaintiff to transmit the Woman's Magazine through the mails at the pound rate; that defendants were threatening to deprive the plaintiff of its right to use and enjoy the second-class mail privilege without a hearing upon the question whether it should be annulled or suspended; that its legitimate list of subscribers exceeded in number 840,000, and plaintiff was entitled to mail under the second-class privilege approximately twice that number; and that such threatened suspension would work irreparable damage and loss to the plaintiff; wherefore plaintiff prayed for an injunction to restrain the defendants from detaining any copies of the magazine in transmission through the mail (within the number of 1,600,000 copies), that the court would ascertain and adjudge by its decree the amount of the legitimate subscription list of the magazine as of March 1, 1907, and

for prior months since September, 1905, to the end that
the controversy raised by the defendants might be ter-
minated, "and that said defendants as postmaster and
assistant be perpetually enjoined from interfering with the
full use and enjoyment of said second-class privilege by
plaintiff according to the finding and decree of this court,
ascertaining the proper and just extent and limits thereof,
as herein prayed." There was also a prayer for a tem-
porary injunction, and for other and further relief. Upon
submission of the bill of complaint and verifying affidavit
the Circuit Court granted a temporary restraining order,
and an order to show cause why an injunction *pendente lite*
should not be allowed. Upon the hearing of this order an
injunction was refused, on the ground that no permit had
ever been granted allowing the Woman's Magazine the
second-class privilege, except a temporary permit issued
August 21, 1902, which by its terms was to continue
"until the Postoffice Department shall determine whether
it is admissible as second-class matter;" that the only
determination of the application was that made by the
Postoffice Department in March, 1907, refusing the priv-
ilege; that the law did not require the department to
grant a hearing upon the question of admitting the maga-
zine to the second-class privilege, and that there was no
provision of law for reviewing the action of the Postmaster
General in the matter.

The action proceeded, and while it was pending, and
on September 24, 1907, a new application was made by
the appellant to the Postoffice Department for the entry
of the Woman's Magazine as second-class matter, and this
application was granted in December, to take effect as of
September 24th. Defendants filed a supplemental plea
setting up this order, and that by virtue of it the publica-
tion in question was being received and carried by the
Postoffice Department at the second-class rate. The
appellant replied, and the action proceeded to final hear-

ing, resulting in the dismissal of the bill. The complainant appealed to the Circuit Court of Appeals, where the decree was affirmed, a majority of the court holding that the questions upon which the appellant's right to equitable relief depended had become moot questions, and that its claim for reimbursement for certain payments made *pendente lite* for postage in excess of the amount calculated at the second-class pound rate was the proper subject-matter of a suit at law, leave to bring which was reserved in the decree. 182 Fed. Rep. 13.

It appears that the "Woman's Magazine" was, except for a change of name, identical with a previous publication called the "Winner Magazine," to which the privilege of the second-class rate was accorded by the Postoffice Department in the year 1899. The application for change of name was made in the year 1902. By Postal Laws and Regulations (1902), § 443, in case of a change of name of a publication already entered as second-class matter, publishers are required to apply for reëntry the same as if the publication were a new one. Such an application was made in the present case, and a temporary permit was issued by the defendant postmaster at St. Louis, and confirmed by the Postoffice Department, to continue "pending consideration of the application for its reëntry as second-class matter upon change of name from 'The Winner.'" This was in accordance with Postal Laws and Regulations, § 441. Little or nothing seems to have been done respecting this application until March, 1905, when an investigation was commenced, as the result of which, on June 5th, the publishers were required to show cause why the authorization for the admission of the Woman's Magazine to the second class of mail matter should not be revoked, upon the grounds, "First, it is primarily designed for advertising purposes; Second, it is primarily designed to advertise the other businesses in which the stockholders and officers of the publishing company, and

especially E. G. Lewis, are interested; Third, it is prima-
rily designed for free circulation, or for circulation at
nominal rates." Under date of April 12, 1906, defendant
Wyman notified the appellant that "From facts obtained,
which in my judgment justify me in the conclusion that
the legitimate subscriptions to the Woman's Magazine
are not to exceed 539,901, and that you are entitled to
transmit through the mails at the pound rate not to ex-
ceed 1,079,802 copies of that publication, including sample
copies, you are hereby notified that the transient second-
class postage at the rate of one cent for each four ounces
or fraction thereof must be prepaid by stamps affixed on
all copies of said publication in excess of your legitimate
mailings, as above indicated, hereafter presented by your
company." The restriction of the second-class privilege
to a number of copies not more than double the legitimate
list of subscribers was based upon §§ 436 and 456 of the
Postal Laws and Regulations. This notice served to
renew the controversy between the appellant and the
Postoffice Department, a controversy that continued until
March 4, 1907, when the Postmaster General made an
order that in effect limited the second-class privilege of
the Woman's Magazine to 539,901 copies for legitimate
subscribers, and a like number in addition for sample
copies, sustained the action of the postmaster at St. Louis
based upon that finding, and required the postmaster to
remit to the Department the excess postage that had
been collected by him, and to demand from the publisher
the balance due the Government at the transient second-
class rate upon all excess copies of the publication mailed
on and after October 1, 1905. At the same time the
Postmaster General denied "the pending application sub-
mitted August 22, 1902, for entry of this publication as
second-class matter," upon the following ground—"Upon
a hearing granted the publisher April 30th and May 1st,
1906, and upon a careful and thorough investigation of

all of the evidence by the Department, I find that the publication does not have a legitimate list of subscribers; that it is designed and published primarily for advertising purposes; and that it is being circulated at a nominal rate contrary to the law and the regulations of the department."

·It was and is contended by the appellant that this order, instead of being the denial of an application for admission to the second-class privilege, was in effect the suspension or annulment of an existing privilege; that this could not be done without a hearing because of the provisions of the act of March 3, 1901, 31 Stat. 1107, c. 851; and that there had not been any proper hearing.

One of the matters in contention between the parties at the time of the inception of the action was the actual extent of the *bona fide* circulation of the magazine; the appellant averring that it had a "legitimate list of subscribers" exceeding in number 840,000, and that under the established practice, allowing as many sample copies in addition, it was entitled to the pound rate upon at least 1,600,000 copies of each issue. It was this that gave rise to the prayer of the original petition for an ascertainment of the amount of the legitimate subscription list and for an injunction to restrain the defendants from detaining any copies within the number of 1,600,000.

We agree, however, with the Court of Appeals, that the new application made pending the suit, and the order of the Postoffice Department thereon admitting the magazine to the second-class privilege as of September 24, 1907, which privilege the appellant has ever since enjoyed, render the above contentions moot questions, inasmuch as the appellant is no longer in a position to ask for an injunction.

It is contended that the bill ought to have been retained, and other equitable relief accorded to the appellant thereunder, principally for three reasons—

First, that upon the granting of the temporary restraining order in March, 1907, the appellant, pursuant to the order of the court, gave a bond to defendants in the penal sum of $10,000, conditioned that if upon a later hearing or final hearing it should be determined that this restraining order was improperly issued the appellant would pay to the postmaster or to the Government all sums of money lost by the Postoffice Department by reason of the granting of the restraining order. But so far as appears no action has been taken or threatened looking to the enforcement of this bond, and so it would be improper to retain the main cause, after the primary object to be accomplished by it has been accomplished by voluntary action of the parties *pendente lite*, in order to determine whether any and what relief should be accorded respecting the bond. Besides, it was not determined at any hearing in the suit that the restraining order was improperly issued. On the contrary, the bill was dismissed because of a subsequent change in the situation. There is nothing to show that appellant is in any danger from an action to enforce this bond.

Some mention is made of indemnity bonds demanded of appellant by the defendant postmaster and given by the appellant and sureties, as security for excess postage. There is nothing before us, however, to show the facts respecting these bonds, or any reason for retaining the suit in order that the rights of the parties under them may be adjudicated.

Secondly, it is said that because the defendant postmaster insisted that the Woman's Magazine did not have the number of subscribers claimed by the appellant, he demanded during the period from April, 1906, to May, 1907, payments of alleged excess postage as a condition to mailing the copies that were being sent out monthly, and that because of that demand appellant made monthly payments under protest aggregating $20,650. Reference

is made to the prayer of the bill,—"that this court may ascertain and adjudge by its decree herein the amount of the legitimate subscription list of said Woman's Magazine, as of March 1, 1907, and for prior months since September, 1905, to the end that there may be a close of the unseemly controversy raised by said defendants," etc. But this prayer was manifestly incidental to the main prayer for an injunction. There is nothing in the facts that would justify the retention of the bill in order to secure an accounting respecting the transactions that antedated the commencement of the action. Of the $20,650 in question, all but $3,500 appear to have been paid prior to the inception of the suit. The smaller amount only would in any view be within the fair scope of inquiry under the bill, and it would still be necessary for appellant to resort to an action at law for the previous payments. No sufficient reason is shown for retaining the bill in order to determine this controversy in the court of equity.

Thirdly, the order made *pendente lite* by the Postmaster General admitting the magazine to the second-class privilege as of September 24, 1907, was accompanied with an order that ascertained the legitimate list of subscribers, for the purpose of adjusting the postage that had been paid at the full rate for the October issue, at the number of 343,341, and authorized the postmaster to accept pound-rate postage on mailings as to subscribers of that number of copies, and an equal number of sample copies, and required him to charge postage at the transient second-class rate—one cent for each four ounces or fraction thereof—upon the mailings in excess of the number mentioned. Also, it is contended that the Department refused to allow the appellant to send copies to those whose subscriptions expired during a considerable part of the interval of suspension. But these are matters of administration, for the orders in question appear to have been made by the Postmaster General with respect to the new ap-

plication for admission to the second-class privilege that was made pending the suit, and granted, as already mentioned. They afford no proper ground for any kind of relief in the present action.

*Decree affirmed.*