## DAKOTA COAL CO. et al. v. FRASER, Adjutant General, et al.

(Circuit Court of Appeals, Eighth Circuit. August 27, 1920.)

No. 5560.

1. **Appeal and error ⨺781(4)—Possession of complainants' mine by state not reviewable after possession restored.**

An appeal from an order denying a temporary injunction to restrain the adjutant general of the state, acting under the orders of the Governor, from taking possession and operating plaitniffs' coal mine, should be dismissed as moot, where possession of the mine had been surrendered by defendant, and control thereof resumed by plaintiffs, since the direction to grant the temporary injunction would be fruitless.

2. **Appeal and error ⨺781(1)—Importance of legal questions does not prevent dismissal of moot appeal.**

The fact that an appeal from an order which has become moot by change of conditions since the order was rendered involves questions of public importance, which might arise again in the future, does not prevent the dismissal of the appeal as moot.

3. **Appeal and error ⨺1178(8)—Though appeal from denial of injunction was moot, order reversed, with leave to amend petition.**

Where an appeal from an order denying a temporary injunction has become moot by changed conditions, but the main case is pending on a motion to dismiss the complaint, the order will not be permitted to stand, but will be reversed, with direction to permit plaintiffs to amend their complaint, if they so desire.

Appeal from the District Court of the United States for the District of North Dakota; Charles F. Amidon, Judge.

Suit by the Dakota Coal Company and others against G. A. Fraser, individually and as Adjutant General of the state of North Dakota, and others. From an order denying the motion of plaintiffs for a temporary injunction, plaintiffs appeal. Order reversed, and case remanded, with directions to vacate the order and permit plaintiffs to amend their complaint.

John E. Greene, of Minot, N. D. (A. W. Cupler, of Fargo, N. D., and Fowler, Schmitt, Carlson & Furber, of Minneapolis, Minn., on the brief), for appellants.

Seth W. Richardson, of Fargo, N. D., for appellees.

Before SANBORN and STONE, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge. During the strike of the coal miners in November, 1919, the Governor of North Dakota, claiming to act by virtue of the authority vested in him as Governor of the state and commander in chief of the state militia, directed the adjutant general of the state to take charge of and operate the coal or lignite mine of the plaintiffs in this action, together with the mines of 31 other companies engaged in operating coal or lignite mines in said state.

---

⨺For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The Governor in his proclamations declared that a crisis had arisen as a result of the strike, threatening severe suffering to many in the state because of the lack of fuel. He ordered the adjutant general to see that the public was supplied with fuel, and to carry out the said order of the Governor the adjutant general was authorized to call to his assistance such male persons between the ages of 18 and 45 years as he might deem necessary, and he directed the adjutant general to prevent any interference with the operation of said mines, and to arrest any person or persons engaged in acts of violence, intimidation, or interference with the operation of said mines, and to hold such persons under guard until their release would not endanger the public safety. The Governor's directions to the adjutant general provided that, whenever the operators and miners should come to an agreement and demonstrate their willingness and ability to operate the said mines, or any of them, in such manner as to protect the public, control of such mines should be relinquished to the owners.

Thereupon plaintiffs filed their complaint in the court below against the adjutant general and others, setting up the jurisdictional facts and alleging that the plaintiff McClure Coal Company was the owner, and the plaintiff Dakota Coal Company was the lessee and operator, of the coal lands described in the complaint, and that the lessee was in possession of and operating the coal mines located on said lands. The complaint set out the proclamations of the Governor and alleged that the defendant Fraser, the adjutant general, and his codefendants intended to take possession of plaintiffs' mine and to operate the same. Plaintiffs plead great and irreparable injury in sufficient particularity, and also allege:

"That it is the desire and intention on the part of these plaintiffs, and especially of the plaintiff lessee, to continue the operation of said coal mines, as they have been and now are being and to produce therefrom the maximum amount of coal at all times, and to use such means as are within its command to successfully and continuously operate said mine for its own profit and the public convenience and service; that the threatened interference by and on the part of the defendants in this action will deprive the plaintiffs of that right and privilege, and will result in the violation of those guaranties contained in the Fourteenth Amendment to the Constitution of the United States, which declares that no state shall 'deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws,' and would also be a denial and infringement of that further right guaranteed to these plaintiffs by the Fifth Amendment to the Constitution of the United States which declared that 'private property shall not be taken for public use without just compensation'; that such action on the part of these defendants would also constitute an infringement upon and denial of the rights of these plaintiffs as guaranteed to them by the provisions of the Constitution of the state of North Dakota."

Upon the filing of the complaint the trial court issued a restraining order, and an order requiring the defendants to show cause why a temporary injunction should not issue. A hearing was had upon the order to show cause, and on November 26th the court made its order denying the motion of the plaintiffs for a temporary injunction. On December 9th plaintiffs filed their petition for appeal and assignments of error in the lower court, and on January 29, 1920,

filed the record on appeal in this court. The error assigned by them in this court is as follows:

"The court erred in denying the application of the plaintiffs for a preliminary injunction, and in making its order refusing to grant a preliminary injunction, as prayed for in the bill of complaint. Wherefore plaintiffs and appellants pray that said order be reversed, and said district court be ordered to grant a preliminary injunction as prayed for by the plaintiffs."

The appellees have filed a motion to dismiss the appeal on the ground that the subject-matter of said appeal is now moot. The appellants resist the motion to dismiss the appeal on the grounds that:

(1) "If the order appealed from be reversed, the appellants have the right to a judgment for the damages sustained by them resulting from appellees' possession and operation of the properties in question. Substantial and valuable rights therefore remain to be determined between the parties in this suit, if the order be reversed on this appeal."

(2) "The matter actually involved is the power and authority of the agencies of state government with respect to the private property of the citizen—a question of great public concern, the decision of which will serve as a guide in case of future similar attempts by such agencies."

The motion to dismiss is supported by the affidavit of the defendant Fraser and opposed by the affidavit of B. A. Pratt, manager of the plaintiff Dakota Coal Company. There is some conflict in the statements contained in said affidavits. The court finds the facts to be that, after the denial by the trial court of plaintiffs' motion for a temporary injunction on November 26, 1919, the defendant Fraser and his codefendants, acting under him and as his subordinates, took possession of plaintiffs' mine and control of the operation thereof until some time in the month of December, 1919, when they withdrew from said mine and ceased to exercise any further control over the operations thereof.

The affiants in their affidavits are in verbal conflict in respect to just what was done by the defendants when they withdrew from said mine and ceased to exercise further control over the operation thereof. We deem it unimportant, however, whether their action be denominated as a surrender, abandonment, relinquishment, or other term of a generally similar import.

There is also a conflict with respect to the action taken by the plaintiff lessee after the withdrawal of the defendants from said mine; but, in view of the direct and affirmative allegations contained in the affidavit of the defendant Fraser to the effect that agreements were entered into between plaintiffs and their employés, under which plaintiffs were able to operate their mine, and that for many months last past plaintiffs have had sole and exclusive and uninterrupted control of their properties, which allegations are not denied, except by indirection, by B. A. Pratt in his affidavit in behalf of the plaintiffs, the court finds that plaintiffs did by their own act resume possession of said mine prior to the date of the filing of their appeal to this court, and have ever since been in control of its operation.

[1] The only relief asked for by the plaintiffs on this appeal—the only relief this court could give—is to reverse the order of the trial court denying plaintiffs' motion for a temporary injunction, and

granting, or directing the trial court to grant, a preliminary injunction. What purpose would such relief serve at this time? The defendants are not now in possession of or exercising any control over plaintiffs' mine. The crisis described by the Governor, and made the basis of his action, has passed, and the defendants disclaim any intention of again taking possession of the mine of the plaintiffs. Such relief is not necessary to prevent injury to plaintiffs, because the injury, if any, threatened at the hearing before the trial court has been done. It is not necessary in order to prevent a threatened wrong—that, is a wrong about to be done—in the taking of plaintiffs' property without just compensation, or due process of law, because the defendants now disclaim any intention or purpose of taking possession or control of said property.

It is the judgment of the court that the controversy with respect to a temporary injunction came to an end when the defendants abandoned or surrendered the possession and control of plaintiffs' mine, and the plaintiffs re-entered into possession of said mine and resumed the control and operation thereof, and that under the authorities cited below the case became moot, and should be treated accordingly. California v. San Pablo, etc., Railroad, 149 U. S. 308, 13 Sup. Ct. 876, 37 L. Ed. 747; Mills v. Green, 159 U. S. 651, 16 Sup. Ct. 132, 40 L. Ed. 293; Richardson v. McChesney, 218 U. S. 487, 31 Sup. Ct. 43, 54 L. Ed. 1121; Lewis Publishing Co. v. Wyman, 228 U. S. 610, 33 Sup. Ct. 599, 57 L. Ed. 989; Id., 182 Fed. 13, 104 C. C. A. 453; United States v. Hamburg-American Co., 239 U. S. 466, 36 Sup. Ct. 212, 60 L. Ed. 387; Berry v. Davis, 242 U. S. 468, 37 Sup. Ct. 208, 61 L. Ed. 441; Board of Public Utility, etc., v. Compania General, etc., 249 U. S. 425, 39 Sup. Ct. 332, 63 L. Ed. 687; United States v. Alaska Steamship Co., etc., 253 U. S. 113, 40 Sup. Ct. 448, 64 L. Ed. —— (No. 541, Oct, Term, 1919, filed May 17, 1920); Meccano, Limited, v. John Wanamaker, 253 U. S. 136, 40 Sup. Ct. 463, 64 L. Ed. —— (No. 187, Oct. Term, 1919, filed May 17, 1920); Commercial Cable Co. v. Burleson, 250 U. S. 360, 39 Sup. Ct. 512, 63 L. Ed. 1030. The objections of the appellants above quoted are fully answered in the cases cited.

[2] The second objection urged against the dismissal of the appeal has been commented upon so frequently by the Supreme Court of the United States that it requires no consideration or comment other than that contained in the cases above cited. In California v. San Pablo, supra, the Supreme Court of the United States said:

"The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property, which are actually controverted in the particular case before it. When, in determining such rights, it becomes necessary to give an opinion upon a question of law, that opinion may have weight as a precedent for future decisions. But the court is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it."

In Mills v. Green, supra, the court said:

"The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare

principles or rules of law which cannot affect the matter in issue in the case before it. It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal."

And after further discussion the court said:

"But, if the intervening event is owing either to the plaintiff's own act, or to a power beyond the control of either party, the court will stay its hand."

In Richardson v. McChesney, supra, the court said:

"The thing sought to be prevented has been done, and cannot be undone by any judicial action. Under such circumstances there is nothing but a moot case"—citing Mills v. Green and Jones v. Montague, 194 U. S. 147, 24 Sup. Ct. 611, 48 L. Ed. 913. The duty of the court is limited to the decision of actual pending controversies and it should not pronounce judgment upon abstract questions, however such opinion might influence future action in like circumstances."

In United States v. Hamburg, supra, the court said:

"While this mere outline shows the questions which are at issue, and which would require to be considered if we had the right to decide the controversy, it at once further demonstrates that we may not, without disregarding our duty, pass upon them because of their absolute want of present actuality; that is, because of their now moot character as an inevitable legal consequence springing from the European war, which is now flagrant—a matter of which we take judicial notice [citing cases]. The legal proposition is not in substance controverted, but it is urged, in view of the character of the questions and the possibility or probability that on the cessation of war the parties will resume or recreate their asserted illegal combination, we should now decide the controversies in order that by operation of the rule to be established any attempt at renewal of or creation of the combination in the future will be rendered impossible. But this merely upon a prophecy as to future conditions invokes the exercise of judicial power not to decide an existing controversy, but to establish a rule for controlling predicted future conduct, contrary to the elementary principle which was thus stated in California v. San Pablo, etc., R. R., 149 U. S. 308, 314: 'The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property, which are actually controverted in the particular case before it'."

At this point in the discussion it may be apropos to refer to the Trans-Missouri Case, 166 U. S. 290, 17 Sup. Ct. 540, 41 L. Ed. 1007, and the Southern Pacific Case, 219 U. S. 498, 31 Sup. Ct. 279, 55 L. Ed. 310, which are relied upon by the appellants in opposition to the motion to dismiss. Chief Justice White, in the Hamburg-American Company Case, above referred to, takes up, discusses, and distinguishes these two cases from the Hamburg Case, which we think disposes of these two cases as authority in the case at bar. In the Burleson Case, supra, the court says:

"As the result of submitting an inquiry to counsel as to whether the cases had become moot, that result is admitted by the United States, but in a measure is disputed by the appellants, for the following reasons: First, it is said that, as the taking over of the lines by the President was wholly unwarranted and without any public necessity whatever, there is ground to fear that they may again be wrongfully taken, unless these cases now proceed to a decree condemning the original wrong; and, second, that although it is true that during the operation of the property while under the control of the

government all the revenues derived from it were separately kept and have been returned to the owners of the property—a result which financially is satisfactory to them—nevertheless, unless there is a decree in this case, the owners can feel no certitude that the revenues may not be claimed from them by the United States in the future. But we are of opinion that these anticipations of possible danger afford no basis for the suggestion that the cases now present any possible subject for judicial action, and hence it results that they are wholly moot, and must be dismissed for that reason."

In United States v. Alaska Steamship Co., etc., supra, the court says:

"Where by an act of the parties, or a subsequent law, the existing controversy has come to an end, the case becomes moot, and should be treated accordingly."

[3] This appeal, however, involves the question of the right to a temporary injunction at the time of the hearing in November, 1919, only. There has never been any hearing upon the merits. It appears from the record before us that the main case is now pending in the trial court upon a motion to dismiss the complaint. In discussing the action of an appellate court upon an appeal in the case of Meccano, Limited, v. John Wanamaker, supra, in which the trial court granted a preliminary injunction, the Supreme Court of the United States said:

"But the appeal was from an interlocutory order, and the court could only exercise powers given by statute. On such an appeal a cause may be dismissed, if it clearly appears that no ground exists for equitable relief; but finally to decide a defendant's rights upon the mere statement of his adversary, although apparently supported by ex parte affidavits and decrees of other courts, is not within the purview of the act. He is entitled to a day in court, with opportunity to set up and establish his defenses."

In the Hamburg-American Co. Case, above quoted, the court said:

"Although it thus follows that there are no issues on the merits before us which we have a right to decide, it yet remains to be determined what our order should be with reference to the decree below rendered, which, as we have seen, was against the government and in favor of the assailed combination, because it was found not to be within the prohibitions of the Anti-Trust Act. As established by the ruling in South Spring Hill Gold Co. v. Amador Gold Co., 145 U. S. 300, our conclusion on such subject must be reached without at all considering the merits of the cause, and must be based solely upon determining what will be 'most consonant to justice,' in view of the conditions and circumstances of the particular case. Coming to consider the question in that light, and in view of the nature and character of the conditions which have caused the case to become moot, we are of opinion that the ends of justice exact that the judgment below should not be permitted to stand when, without any fault of the government, there is no power to review it upon the merits, but that it should be reversed, and the case be remanded to the court below, with directions to dismiss the bill without prejudice to the right of the government in the future to assail any actual contract or combination deemed to offend against the Anti-Trust Act."

In Commercial Cable Co. v. Burleson, supra, the court said:

"In giving effect, however, to that conclusion, we are of opinion that the decree below, which in substance rejected the rights asserted by the complainants, ought not to be allowed to stand, but, on the contrary, following the well-established precedents (United States v. Hamburg-American Co., 239 U. S. 466, 36 Sup. Ct. 212, 60 L. Ed. 387; United States v. American-Asiatic S. S. Co., 242 U. S. 537, 37 Sup. Ct. 233, 61 L. Ed. 479), the decrees below should be reversed, and the cases remanded to the lower court, with directions to set

aside the decrees and to substitute decrees dismissing the bills without prejudice and without costs, because the controversy which they involve has become moot, and is no longer, therefore, a subject appropriate for judicial action."

The above quotations answer the first objection of the plaintiffs above set out, and, applying the rules therein announced, it is the opinion of the court that the order of the trial court, denying plaintiffs' motion for a temporary injunction, should not be permitted to stand, but should be reversed, and the case remanded to the lower court, with directions to set aside and vacate said order denying the plaintiffs' motion for a temporary injunction, and, in view of the changed conditions, the plaintiffs, if they desire, should be permitted to amend their complaint.

And it is so ordered. The parties to pay their own costs.