**PRECISION CASTINGS CO., Inc., v.
BOLAND et al.**

No. 2036.

District Court, W. D. New York.

March 6, 1936.

Hiscock, Cowie, Bruce & Lee, of Syracuse, N. Y. (H. Duane Bruce, Gerald H. Henley, and Matthew R. Quinn, all of Syracuse, N. Y., of counsel), for complainant.

Robert B. Watts, of New York City, for defendants John P. Boland and Daniel B. Shortal.

RIPPEY, District Judge.

This action is brought by the Precision Castings Company, Inc., a corporation organized under the laws of the state of New York, having its principal office and place of business in the village of Fayetteville, Onondaga county, N. Y., and engaged in the business of manufacture and sale of die castings. The bill of complaint was filed with the clerk on January 2, 1936. The plaintiff seeks to restrain John P. Boland, individually and as regional director of the National Labor Relations Board for the Third Region, Daniel B. Shortal, individually and as attorney for the National Labor Relations Board for the Third Region, and J. Warren Madden, John M. Carmody, and Edwin S. Smith, individually and as members of and constituting the National Labor Relations Board, immediately from proceeding with a hearing under section 10(b) of the National Labor Relations Act, approved July 5, 1935 (29 U.S.C.A. § 160(b), and ultimately from any proceedings whatsoever under the act, on the broad ground that the act as a whole is unconstitutional. The hearing (temporarily restrained) was originally set for January 6, 1936, at Syracuse, N. Y., before an examiner to be designated by the Board. The complaint upon which the hearing was to be had was dated December 20, 1935, was signed by John P. Boland as regional director for the Third region in behalf of the National Labor Relations Board, and was issued upon a charge, made by the Iron Molders Union of North America, Local 80, of Fayetteville, N. Y., that the plaintiff has engaged in, and is now engaging in, unlawful labor practices affecting commerce as set forth and defined in the said National Labor Relations Act (29 U.S.C.A. § 151 et seq.).

The bill of complaint charges, in substance, that the act is wholly unconstitu-

tional upon the grounds that it violates the due process clause of the Fifth Amendment, the provisions of the Seventh Amendment as to trial by jury, the Fourth Amendment as to unreasonable search and seizure, the provisions of article 3, § 1, with respect to delegation of judicial power of the United States, the Ninth and Tenth Amendments, in that Congress has attempted to legislate with reference to powers expressly reserved to the states, article 1, § 8, of the Constitution, in that it legislates with reference to intrastate commerce and that the administrative features generally constitute an unwarranted invasion of the plaintiff's rights to freedom of contract and the conduct of its business. Plaintiff invokes the aid of the general equity powers of this court to prevent irreparable loss and damage which it alleges proceedings before the Board will entail and for recoupment of which it claims it has no adequate remedy at law.

Upon the filing of the bill of complaint and before the service of the subpoena herein, a temporary restraining order was issued enjoining all of the defendants individually and in their representative capacities and their deputies, clerks, and attorneys and all persons acting under their authority until further order of the court from proceeding further against the complainant "under and pursuant to the provisions of the National Labor Relations Act, or in any manner interfering with the defendant and the conduct of its business." A subpoena was issued by the clerk directed to all of the defendants both in their individual and representative capacities. The only defendants served were Boland and Shortal, who have their official headquarters at Buffalo, N. Y., and are residents of, and were found within, the Western District of New York. It appears that the defendants Madden, Carmody, and Smith are neither residents nor citizens of the Western District of New York, and have not been, and are not, within the said district. Neither was appeared in this action either individually or in his representative capacity, nor has the National Labor Relations Board appeared. Contemporaneously with the hearing on the motion for a temporary injunction, the defendants Boland and Shortal appeared and filed a return to the order to show cause by which the motion for temporary injunction was brought before the court and moved to quash the subpoena and to

dismiss the bill on the ground that the court was without jurisdiction.

Upon the motions to quash and dismiss, Boland and Shortal initially assert that they are not proper parties to this suit and that there are no parties before the court against whom relief may be had. The National Labor Relations Board is created under section 3(a) of the act (29 U.S.C.A. § 153(a), wherein it is provided that the Board shall be composed of three members who shall be appointed by the President, by and with the advice and consent of the Senate. Pursuant to the authority therein created, Madden, Carmody, and Smith were duly appointed, and thereafter qualified, and are acting, as the members of the National Labor Relations Board. Section 5 of the act (29 U.S.C.A. § 155) provides that the principal office of the Board shall be in the District of Columbia, but that it may exercise any and all of its powers at any other place, and it may, either through its own members or by such agents or agencies as it may designate, prosecute any inquiry necessary to its functions in any part of the United States.

It is claimed that jurisdiction over Madden, Carmody, and Smith is obtained through delivery of copies of the subpoena and bill and order to show cause to Boland and Shortal, and that service upon them as agents for the Board constitutes full compliance with the requirements of rule 73 of the Equity Rules (28 U.S.C.A. following section 723) and 28 U.S.C.A. § 381, at least so far as the issuance of a temporary injunction is concerned, because they were created agents of the Board for all purposes of carrying out the provisions of the National Labor Relations Act both by the act itself and by the rules and regulations of the Board compiled thereunder. Section 4 of the act (29 U.S.C.A. § 154) provides that the Board may appoint such attorneys and regional directors and other employees as it may from time to time find necessary for the proper performance of its duties. Authority is conferred upon the Board to from time to time make, amend, or rescind such rules and regulations as may be necessary to carry out the provisions of the act. Pursuant to this authority, the National Labor Relations Board, on September 14, 1935, formulated "General Rules and Regulations (Series 1)," which fix the procedure of the Board under section 10

of the act (29 U.S.C.A. § 160) for the prevention of unfair labor practices. The defendant Boland has been duly designated as the regional director for the Third region and the defendant Shortal as the attorney for the Board. The regulations provide that a charge may be filed by any person or labor organization against an employer that he has engaged in or is engaging in some one or more unfair labor practices designated in the act (if such practices are in or affect interstate commerce) with the regional director for the region in which the alleged unfair practice has occurred or is occurring. Such a charge was filed with the defendant Boland against the complainant in the case at bar by the Iron Molders Union of North America, Local 80, of Fayetteville, N. Y. The regulations further provide (section 5) that, after the charge has been filed, if it appears to the regional director that a proceeding in respect thereto should be instituted, he (the regional director) shall issue and cause to be served upon the employer and upon the person making the charge a formal complaint in the name of the Board stating the charges and containing a notice of hearing before a trial examiner at a place and time therein fixed, not less than five days after the service thereof. Such a complaint against complainant in the case at bar was issued by the defendant Boland on ·December 20, 1935, and notice of hearing thereon was given to the complaint, as above indicated, for January 6, 1936. The regulations further provide that the employer, within five days after the service of the complaint or within such further period as the regional director may fix, shall have the right to file an answer thereto with the regional director. On December 30, 1935, such an answer was filed by plaintiff with Boland by which the alleged unfair labor practices were denied and every point needed for the protection of plaintiff's rights was raised. The regulations also provide that thereupon all further proceedings are to be had before the trial examiner designated by, and acting in behalf of, the Board. Article IV, sections 1 and 3, of the regulations provide that the regional directors and attorneys, respectively, are designated agents of the Board to perform all the duties and to prosecute any of the functions of the Board in accordance with sections 5, 9(a), 10(b), and 11(1) of the act, 29 U.S.C.A. §§ 155, 159(a), 160(b), 161(1).

■ Undoubtedly, service upon Boland, the regional director, and upon Shortal, the attorney for the Board, under the allegations in the complaint, brings Madden, Carmody, and Smith within the jurisdiction of the court for the purpose of restraint from the performance of an unlawful act. Franz v. Franz (C.C.A.) 15 F.(2d) 797; Veitia v. Fortuna Estates (C.C.A.) 240 F. 256; Marine Midland Trust Co. v. Eybro Corporation (C.C.A.) 58 F.(2d) 165; Ryan v. Amazon Petroleum Corporation (C.C.A.) 71 F.(2d) 1; Colorado v. Toll, 268 U.S. 228, 45 S.Ct. 505, 69 L.Ed. 927.

■ If any one of the defendants is acting beyond the limits of his authority under the National Labor Relations Act, and thereby inflicts, or threatens to inflict, great and irreparable injury to the plaintiff, and the plaintiff is without adequate remedy at law, or if he is proceeding, or pretending to proceed, officially under an unconstitutional act, equity may intervene to restrain him from continuance of his unlawful conduct. Philadelphia Company v. Stimson, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570; Colorado v. Toll, supra; Railroad Retirement Board v. Alton R. Co., 295 U.S. 330, 55 S.Ct. 758, 79 L.Ed. 1468. The plaintiff does not allege, nor is it pretended or asserted here by complainant, that any one of the defendants is acting, or attempting to act, or threatening to act, outside of the authority conferred by the provisions of the National Labor Relations Act. The sole ground, therefore, on which this suit can be maintained or on which either a temporary or permanent injunction can issue is that the congressional authority under which they are performing, or threatening to perform, the acts alleged to form the basis of irreparable loss and injury to complainant, is wholly unconstitutional and void.

■ When a claim is made that a congressional enactment is unconstitutional, the courts uniformly entertain such contentions with skepticism and extreme caution, and should never invalidate it unless its unconstitutionality is so clear as to leave no room for rational doubt. In Commonwealth v. Smith, 4 Bin.(Pa.) 117, 123, it is said: "It must be remembered, however, that for weighty reasons, it has been assumed as a principle, in construing constitutions, by the Supreme Court of the United States, by this Court, and every other court of reputation in the United States, that an act of the legislature is

not to be declared void, unless the violation of the constitution is so manifest as to leave no room for reasonable doubt."

In Dartmouth College v. Woodward, 4 Wheat. 518, at page 625, 4 L.Ed. 629, Chief Justice Marshall had occasion to state: "On more than one occasion, this court has expressed the cautious circumspection with which it approaches the consideration of such questions; and has declared, that in no doubtful case, would it pronounce a legislative act to be contrary to the constitution."

In Fletcher v. Peck, 6 Cranch, 87, 128, 3 L.Ed. 162, Chief Justice Marshall said: "It is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other."

In Ogden v. Saunders, 12 Wheat. 213, 270, 6 L.Ed. 606, it was said: "But if I could rest my opinion in favor of the constitutionality of the law on which the question arises, on no other ground than this doubt so felt and acknowledged, that alone would, in my estimation, be a satisfactory vindication of it. It is but a decent respect due to the wisdom, the integrity, and the patriotism of the legislative body, by which any law is passed, to presume in favor of its validity, until its violation of the constitution is proved beyond all reasonable doubt. This has always been the language of this court, when that subject has called for its decision; and I know that it expresses the honest sentiments of each and every member of this bench."

In the Sinking-Fund Cases, 99 U.S. 700, 718, 25 L.Ed. 496, the court said: "This declaration [that an act of Congress is unconstitutional] should never be made except in a clear case. Every possible presumption is in favor of the validity of a statute, and this continues until the contrary is shown beyond a rational doubt. One branch of the government cannot encroach on the domain of another without danger. The safety of our institutions depends in no small degree on a strict observance of this salutary rule."

■ Nor will the court decide questions of a constitutional nature unless absolutely necessary to a decision of the case (Burton v. United States, 196 U.S. 283, 295, 25 S. Ct. 243, 49 L.Ed. 482) and never until the facts upon which its constitutionality depend are before the court (Abrams v. Van Schaick, 293 U.S. 188, 55 S.Ct. 135, 79 L.Ed. 278) nor if there is also present some other ground upon which disposition may be made of the case (Ogden v. Saunders, supra).

■ The court will refuse to pass on constitutional questions until such questions are presented in a justiciable controversy where the private rights of individuals are involved after application of the act by the agency authorized to apply it; prior thereto the outcome of the application of the act is a matter of pure conjecture. Abrams v. Van Schaick, supra; Wilshire Oil Co. v. United States, 295 U.S. 100, 102, 55 S.Ct. 673, 79 L.Ed. 1329; Ashwander v. Tennessee Valley Authority, 296 U.S. ——, 56 S.Ct. 466, 80 L.Ed. ——.

None of the facts alleged have been developed. There is nothing before the court except the bill of complaint, the return, and the act itself.

■ The enactment of the act by Congress was not beyond its powers under the commerce clause of the Constitution. The policy of the government behind the enactment is stated in the last paragraph of section 1 (29 U.S.C.A. § 151), as follows: "It is hereby declared to be the policy of the United States to eliminate the causes of certain substantial obstructions to the free flow of commerce and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection."

In pursuance of that policy, Congress stated in section 7 of the act (29 U.S.C.A. § 157) the rights of employees which have long been recognized, as follows: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection."

The terms "representatives" and "labor organization" are defined in section 2 of the act (29 U.S.C.A. § 152) as follows:

"The term 'representatives' includes any individual or labor organization.

"The term 'labor organization' means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."

■ To protect the rights so declared as a means of protecting interstate commerce, section 8 of the act, 29 U.S.C.A. § 158, makes it unlawful for employers to engage in five definitely enumerated unfair labor practices. All of these are within the declared policy of Congress and properly relate to the declared rights of employees. The act thus defines specifically what constitutes unfair labor practices, and thus meets the requirements against delegating legislative authority. Whether such practices are in or affect interstate commerce within the meaning of the commerce clause of the Constitution (article 1, § 8, cl. 3) and whether any such unfair labor practices have been indulged in by persons or corporations engaged in interstate commerce depends upon an investigation and a determination of what are the facts in any particular case. To make such investigation and determination in the first instance possible, Congress has set up a special procedure and has created a quasi judicial body known as the National Labor Relations Board, whose function is to investigate these facts and, in the first instance, to make a determination. As in the Federal Trade Commission Act (15 U.S.C.A. § 41 et seq.), Congress has made provision in the act now before the court "for formal complaint, for notice and hearing, for appropriate findings of fact supported by adequate evidence, and for judicial review to give assurance that the action of the commission [board] is taken within its statutory authority." Schechter Poultry Corporation v. United States, 295 U.S. 495, 533, 55 S.Ct. 837, 844, 79 L.Ed. 1570, 97 A.L.R. 947.

■ There are only two points during the process of investigation and decision in the administration of the law where substantial rights of the employer can be affected without his consent: First, under section 11(1), 29 U.S.C.A. § 161(1), for the purpose of all hearings and investigations which in the opinion of the Board are proper for the exercise of the powers vested in it, the Board or its agents shall at all reasonable times have access to, for the purpose of examination, and the right to copy, any evidence of any person being investigated or proceeded against which relates to any matter under investigation, but, if the person being investigated declines to submit to an examination or to permit the examining or the copying of any of his records, neither the Board nor any of its agents has any power to compel compliance with its or their demands. Any member of the Board may issue subpœnas requiring the attendance and testimony of witnesses and the production of evidence that relates to any matter under investigation, but there is no power conferred upon the Board or upon any of its agents to enforce such attendance or production of evidence. In the case of refusal to obey such subpœna, proceedings thereupon must be taken in the proper District Court of the United States or, in certain instances, in other courts within the jurisdiction of which the inquiry is carried on or within the jurisdiction of which the person refusing to obey is found or resides or transacts business. Thus the person being investigated may have the full benefit of judicial review on the propriety of any demands made by the Board or its agents for evidence in connection with the matter under investigation, and those fundamental guaranties of personal rights that are recognized by the Constitution as inhering in the freedom of the citizen may be fully protected. Interstate Commerce Commission v. Brimson, 154 U.S. 447, 14 S.Ct. 1125, 38 L.Ed. 1047. Thus the act, on its face, contains no provision in violation of the constitutional guaranty against unreasonable or unlawful search and seizure. Second, when the entire investigation is completed, the examiner is required to file his findings with the Board together with all evidence taken and proceedings had, and it then becomes the duty of the Board, after due notice and full hearing and after a full opportunity has been given to the person being investigated to protect his rights, to make a final order, if supported by evidence and upon suitable findings, dismissing the proceeding or directing the person investigated to cease and desist from the particular un-

fair labor practice in which he has been found to have engaged (section 10(e), 29 U.S.C.A. § 160(e). The Board has no power to enforce any order made by it directing a person investigated to cease and desist from unfair labor practice. Its judgment and order is subject to review by the Circuit Court of Appeals in the circuit in which the unfair labor practice in question was alleged to have been engaged or wherein such person resides or transacts business, or by the Court of Appeals of the District of Columbia, and thereafter by appropriate proceedings before the Supreme Court of the United States. The Circuit Court of Appeals may require further hearings and additional evidence on the application of either party, and may set aside the order as contrary to law. The provision that the findings of the Board, if supported by evidence, shall be conclusive upon the court, does not offend against constitutional guaranties of due process nor preclude the court from setting the findings of fact aside if they are arbitrary or capricious. Voehl v. Indemnity Insurance Company, 288 U.S. 162, 166, 53 S.Ct. 380, 77 L.Ed. 676, 87 A.L.R. 245; Federal Radio Commission v. Nelson Brothers Bond & Mortgage Co., 289 U.S. 266, 276–278, 53 S.Ct. 627, 77 L.Ed. 1166. The act provides that in such investigation the rules of evidence prevailing in courts of law or equity shall not be controlling (section 10(b), 29 U.S.C.A. § 160(b), but this provision does not offend due process, provided substantial rights of the parties are not infringed, and as to those rights the courts may give ample protection. Crowell v. Benson, 285 U.S. 22, 48, 52 S.Ct. 285, 291, 76 L.Ed. 598. If the Circuit Court of Appeals believes that there is insufficient evidence to sustain the Board's findings, it is the same as no evidence, and, as a matter of law, it may set the findings aside. Schoepflin v. Coffey, 162 N.Y. 12, 20, 56 N.E. 502.

■ The act in so far as it sets up administrative machinery is substantially the same as the Federal Trade Commission Act. .The procedure outlined in the act affords all fair and reasonable opportunities to be heard, to present evidence, to review arbitrary administrative action, that is guaranteed by due process of law. Arkansas Wholesale Grocers' Ass'n v. Federal Trade Commission (C.C.A.) 18 F.(2d) 866, certiorari denied 275 U.S. 533, 48 S. Ct. 30, 72 L.Ed. 411. Like the Federal Trade Commission, the National Labor Relations Board is an independent agency largely free from executive control except in the matter of appointment. Humphrey's Executor v. United States, 295 U.S. 602, 628, 55 S.Ct. 869, 79 L.Ed. 1611. As in the Interstate Commerce Act (49 U.S.C.A. § 1 et seq.), Congress prescribes standards to be applied, and the administrative agency to facilitate the application of those standards, which, in dealing with the particular case in question, "is required to act upon notice and hearing, and its orders must be supported by findings of fact which in turn are sustained by evidence," and the findings are subject to complete judicial review. Schechter Poultry Corporation v. United States, 295 U.S. 495, 539, 55 S.Ct. 837, 844, 79 L.Ed. 1570, 97 A.L.R. 947. The administrative procedure by the Board and its agencies, as set up in the National Labor Relations Act, is of a familiar pattern and has been employed by Congress in connection with the investigation and determination of facts. In connection with such an agency, it is said in Crowell v. Benson, supra: "The use of the administrative method for these purposes, assuming due notice, proper opportunity to be heard, and that findings are based upon evidence, falls easily within the principle of the decisions sustaining similar procedure against objections under the due process clauses of the Fifth and Fourteenth Amendments."

■ Construction, if possible, must be given so as to sustain the act rather than invalidate it. As we construe the act, it does not provide for any unconstitutional interference with the freedom of contract included within the guaranties of the due process clause of the Fifth Amendment. It is true that the act requires the employer to bargain with representatives of the majority of the employees of any appropriate unit. It goes no further than that. It does not preclude other employees from presenting their grievances and from being heard. There is no provision in the act which expressly or by inference compels the employer to accept dictation from the representatives of the majority as representatives of all employees, nor is there any penalty imposed for failure so to do. The act as applied against interference by an employer engaged in interstate commerce with the lawful right of its employees to organize, to select representatives for the purposes of collective bar-

gaining, and to bargain through those representatives with the employer, does not interfere with the normal exercise of the right of the employer to select or discharge its employees or impair the voluntary character of the employment contract. A similar act with a similar purpose and the same lack of provisions designed to coerce the employer on the subject of the employment contract has been sustained. Texas & N. O. R. Co. v. Brotherhood of Railway & S. S. Clerks, 281 U. S. 548, 50 S.Ct. 427, 74 L.Ed. 1034.

Congress has limited the application of the act (section 2(6) and (7), 29 U.S.C.A. § 152(6, 7) to operations in or directly affecting interstate commerce, in accord with the rulings of the courts in those cases which define what is meant by "interstate commerce" as distinguished from that which is confined within state lines. If an attempt were made by the Board to apply the act to operations intrastate or only indirectly affecting interstate commerce, a different question would arise. That question is academic until the Board thus applies the act. The question of what may be an appropriate unit for the purposes of collective bargaining in any case under the act is a question of fact upon which the employer must be heard after due notice. If section 9 (29 U.S.C.A. § 159) should be construed and applied by the Board so as to compel employers to bargain exclusively with representatives of employees of a unit arbitrarily and unreasonably selected, that question also may be disposed of when the Board so applies the act. Upon neither question can any opinion be expressed at this time.

The administrative provisions of the act, when elsewhere used by Congress, have withstood frequent attacks on the question of constitutionality. As to the procedural sections of the act, there is no violation of constitutional requirements of due process or the prohibition against unwarranted delegation of legislative or judicial power. Under those circumstances, action by the courts cannot be invoked, except in the respects above stated, until proceedings have been exhausted before the administrative agency. Plaintiff has an adequate remedy at law in its right to raise the constitutional issue before the Board and, ultimately, before the courts. Dalton Adding Machine Co. v. State Corporation Commission of Virginia, 236 U.S. 699, 701, 35 S.Ct. 480, 59 L.Ed. 797; Hurst & Son v. Federal Trade Commission (D. C.) 268 F. 874; National Harness Manufacturers' Association v. Federal Trade Commission (C.C.A.) 268 F. 705; Chamber of Commerce of Minneapolis v. Federal Trade Commission (C.C.A.) 280 F. 45.

Attention has been called to the fact that there is no allegation in the bill of complaint nor has any claim been made in the case at bar that any one of the defendants is acting, or threatening to act, outside of or beyond the authority given him by the express terms of the act or by the regulations regularly promulgated and in force under the act or in an arbitrary or capricious manner. Courts cannot intervene to restrain administrative action of governmental officials in the exercise of powers vested in them by the Congress on any assumption that they will or may, in the future, exercise those powers either unreasonably or illegally. Gilchrist v. Interborough Rapid Transit Co., 279 U.S. 159, 49 S.Ct. 282, 73 L.Ed. 652; Dalton Adding Machine Co. v. State Corporation Commission of Virginia, supra; First National Bank v. Albright, 208 U.S. 548, 553, 28 S.Ct. 349, 52 L.Ed. 614; Continental Baking Co. v. Woodring, 286 U.S. 352, 369, 52 S.Ct. 595, 76 L.Ed. 1155, 81 A.L.R. 1402; Chamber of Commerce of Minneapolis v. Federal Trade Commission, supra; Hurst & Son v. Federal Trade Commission, supra. Mere anticipation or fear, therefore, that the Board may act arbitrarily or in excess of its powers, or, in any case, that there may be possible loss or injury, without proof that irreparable injury will result, is no ground for equitable relief. Lewis Publishing Company v. Wyman, 228 U.S. 610, 33 S.Ct. 599, 57 L.Ed. 989; Truly v. Wanzer, 5 How. 141, 12 L.Ed. 88.

The complaint of the Board authorizes investigation by the regional director through the attorney and the examiners of the Board and the making of findings on the following questions: (1) Whether the foundry department in the Fayetteville plant of plaintiff constitutes a unit appropriate for the purposes of collective bargaining within the meaning of the act; (2) whether a majority of the employees of such unit designated the Iron Molders Union of North America, Local 80, as their representatives for the purposes of collective bargaining and as the exclusive representatives of all employees of such unit with respect to rates of pay, wages, hours

of employment, or other conditions of employment; (3) whether such union attempted to bargain collectively on such matters with plaintiff and was denied by plaintiff the right so to do; (4) whether the employees in question were discharged by plaintiff, and whether plaintiff refused to reinstate them because they were members of such union and attempted as such to bargain collectively with plaintiff; (5) whether the plaintiff interfered with, restrained, or coerced its employees in the exercise of the rights guaranteed by section 7 of said act, 29 U.S.C.A. § 157; (6) whether the plaintiff discouraged membership in said union or otherwise interfered with its activities; and (7) whether or not the effect thereof led, or tended to lead, to labor disputes burdening and obstructing interstate commerce and the free flow thereof.

In the investigation of those questions, the plaintiff asserts here in its bill of complaint that it believes that the defendants may cause investigators to come into plaintiff's factory and office for the purpose of examining its private books, records, papers, and documents and to interview its officers and employees, and to otherwise interfere with the orderly discharge by the plaintiff of its business and relations with its employees; that it is the intention and threat of the defendants by subpœna to compel the production of plaintiff's private books, records, papers, and documents and to make examinations and copies thereof, and to compel attendance of plaintiff's officers, agents, and employees as witnesses, thereby disrupting and interfering with the conduct of the plaintiff's business; and that the fact that it is being investigated, with the publicity attendant upon a hearing, might materially affect the sales of its products and the good will of its business; and that any order of the Board requiring it to reinstate discharged employees would disrupt its business, all to its irreparable loss. Whether any of these forebodings of loss or injury will ever prove justified is highly speculative and, aside from any question of the unconstitutionality of the act, does not furnish any ground for the interposition of equitable relief. Neither the Board nor its agents has in any manner acted upon the complaint. There is no order of the Board and nothing to show that the plaintiff is in any danger from the enforcement of any decision which it is authorized to make under the act. It may, in fact, decide all of the issues raised by its complaint in favor of the plaintiff. It is not sufficient to warrant the interference of equity by way of injunctive relief to show merely that the alleged injurious acts may possibly be committed or that injury may possibly result from the acts sought to be prevented or that the proceedings before the administrative agency may be burdensome, if it is shown that they are in the public interest and the burden is imposed on all alike.

Plaintiff insists that Congress has entered a new and forbidden field in the matter of regulation of business. The law is a progressive science (Holden v. Hardy, 169 U.S. 366, 18 S.Ct. 383, 42 L. Ed. 780), and it is the traditional policy of the people and the courts to adapt the law to the economic and social needs of the times. That Congress has power of regulation of interstate commerce and control of the means to effectuate commerce between the states cannot be gainsaid, provided such power is exercised in conformity with other provisions of the Constitution. Gibbons v. Ogden, 9 Wheat. 1, 196, 197, 6 L.Ed. 23; United States v. Chicago, M., St. P. & P. R. Co., 282 U.S. 311, 327, 51 S.Ct. 159, 75 L.Ed. 359. The power of regulation extends to the persons engaged in interstate commerce. Employers' Liability Cases, 207 U.S. 463, 28 S.Ct. 141, 52 L.Ed. 297.

Congress has declared that, in the public interest, it is essential, in behalf of labor, to enforce freedom of association for the purpose of negotiating the terms upon which labor is willing to sell its service to its employer, freedom of choice in the selection of representatives to bargain with the employer, and compulsory bargaining by the employer with those representatives, to the end that there may be amicable adjustment of disputes with reference to wages, hours of labor, and conditions of employment, and that there may be peace instead of strife between labor and capital in matters affecting interstate commerce. Labor's handicap in dealing with its employer in relation to the employment contract has long since engaged the attention of the courts. Holden v. Hardy, supra. The right of labor to deal on an equal footing with its employer has long been recognized in the courts. Congress, in the Railway Labor Act of 1926 (44 Stat. 577), recognized that right, and

it has been held that recognition and enforcement of that right is within the legislative power. Texas & N. O. R. Co. v. Brotherhood of Railway Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034. See 45 U.S.C.A. § 152. Effective means for enforcing that right otherwise in interstate commerce has been lacking. The National Labor Relations Act furnishes the necessary recognition generally and the means of enforcement. To the declared policy there is nothing objectionable in a constitutional sense.

Apropos to the discussion of the power of Congress to legislate for the public interest under the commerce clause of the Constitution and to the scope of court review of such legislation is the decision in Nebbia v. New York, 291 U.S. 502, at page 523, 54 S.Ct. 505, 510, 78 L.Ed. 940, 89 A.L.R. 1469, in which it is said:

"Under our form of government the use of property and the making of contracts are normally matters of private and not of public concern. The general rule is that both shall be free of governmental interference. But neither property rights nor contract rights are absolute; for government cannot exist if the citizen may at will use his property to the detriment of his fellows, or exercise his freedom of contract to work them harm. Equally fundamental with the private right is that of the public to regulate it in the common interest."

"The Fifth Amendment, in the field of federal activity, and the Fourteenth, as respects state action, do not prohibit governmental regulation for the public welfare. They merely condition the exertion of the admitted power, by securing that the end shall be accomplished by methods consistent with due process. And the guaranty of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained." 291 U.S. 502, at page 525, 54 S.Ct. 505, 510, 78 L.Ed. 940, 89 A.L.R. 1469.

"So far as the requirement of due process is concerned, and in the absence of other constitutional restriction, a state is free to adopt whatever economic policy may reasonably be deemed to promote public welfare, and to enforce that policy by legislation adapted to its purpose. The courts are without authority either to declare such policy, or, when it is declared by the legislature, to override it. If the laws passed are seen to have a reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied, and judicial determination to that effect renders a court functus officio. * * * And it is equally clear, that if the legislative policy be to curb unrestrained and harmful competition by measures which are not arbitrary or discriminatory it does not lie with the courts to determine that the law is unwise. With the wisdom of the policy adopted, with the adequacy or practicability of the law enacted to forward it, the courts are both incompetent and unauthorized to deal. The course of decision in this court exhibits a firm adherence to these principles. Times without number we have said that the Legislature is primarily the judge of the necessity of such an enactment, that every possible presumption is in favor of its validity, and that though the court may hold views inconsistent with the wisdom of the law, it may not be annulled unless palpably in excess of legislative power." 291 U.S. 502, at page 537, 54 S.Ct. 505, 516, 78 L.Ed. 940, 89 A.L.R. 1469.

What we have said on the constitutional question is designed to show that plaintiff has failed to establish that the act as a whole is unconstitutional. It has the burden of establishing that fact beyond a rational doubt. The presumption of constitutionality has not been overcome, and that presumption must prevail.

In view of what has been said, no court has jurisdiction to interfere by injunction or otherwise with the Board or its duly authorized agents in proceeding in an orderly and lawful way with their duties as prescribed in the act. Until a final order is made by the Board as provided in section 10(c) of the act (29 U.S.C.A. § 160 (e), or until some substantial right of the plaintiff is affected, the plaintiff cannot complain. Under section 10(e) and (f) of the act (29 U.S.C.A. § 160(e, f), jurisdiction then lies exclusively in the Circuit Court of Appeals. This court is without jurisdiction to entertain this suit, both for want of equity and as a matter of law.

The temporary restraining order herein should be dissolved, the motion for temporary injunction denied, and the motion to

dismiss the bill of complaint should be granted, with costs, and it is so ordered.

If desired or required by rule 70½ of the Equity Rules (28 U.S.C.A. following section 723), formal findings may be prepared and submitted together with the decree carrying the foregoing into effect.