# COMMERCIAL CABLE COMPANY *v.* BURLESON ET AL.

# COMMERCIAL PACIFIC CABLE COMPANY *v.* BURLESON ET AL.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Nos. 815, 816. Argued March 7, 1919.—Decided June 9, 1919.

Appellants' suits to enjoin the Postmaster General from interfering with their cable properties, upon the ground that requisition of these by the President, followed by assumption of possession and control by the defendant, was in excess or abuse of the power given by the Joint Resolution of July 16, 1918, c. 154, 40 Stat. 904, and not attended by adequate provision for compensation, became moot when, by the President's authority, the properties were restored to them, together with the revenues, admittedly sufficient compensation, derived therefrom during government operation. P. 362.

Apprehension that the alleged wrongs may be repeated and that the revenues may be claimed by the United States, does not preserve the justiciable quality of these cases. *Id.*

The dismissal of the bills by the District Court for want of equity, upon a holding that compensation was adequately provided for, and that the other objections were nonjusticiable, was such a rejection of the appellants' asserted right as necessitates a reversal with directions to dismiss without prejudice and without costs. *Id. United States* v. *Hamburg-American Co.*, 239 U. S. 466.

255 Fed. Rep. 99, reversed.

THE cases are stated in the opinion.

*Mr. Charles E. Hughes*, with whom *Mr. William W. Cook* was on the briefs, for appellants.

*The Solicitor General*, with whom *Mr. Assistant to the Attorney General Todd* was on the briefs, for appellees.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

By virtue of the Joint Resolution of July 16, 1918, [c. 154, 40 Stat. 904] considered in the *Dakota Central Telephone Case,* decided June 2, 1919, *ante,* 163, the President, by proclamation dated November 2, 1918, [40 Stat. 1872], assumed control, possession, and supervision "of each and every marine cable system and every part thereof owned or controlled and operated by any company or companies organized and existing under the laws of the United States, or any State thereof."

As in the case of the telephone lines, the proclamation conferred authority upon the Postmaster General to carry out its provisions. In the name of the President, the Postmaster General then took possession and assumed control of the cable lines owned by or under the control of the two companies which are appellants on these records. The companies thereupon filed their bills in the court below to enjoin the Postmaster General or his representatives from interfering with their property because (1) under the circumstances alleged the President had no power to take possession and control of the cable lines; (2) if he had such power, he was not justified in exerting it under the conditions stated, and (3) as the result of the failure to provide adequate compensation, the taking of the cable lines was void for repugnancy to the Constitution. These propositions were based upon elaborate averments concerning the subject-matter. On motion of the defendants the bills were dismissed for want of equity. The court held that as under the facts admitted the first two propositions raised no question of power, but only charged a wrongful exercise of a discretion vested, they stated no ground for relief as the subject was not justiciable, and that as to the third proposition there was no equity in the bill because the pro-

vision made for compensation met the constitutional requirement.

By appeals, the cases were brought here and were argued and submitted in March last. While they were under advisement the United States directed attention to the fact that by authority of the President all the cable lines, with which the two corporations were concerned and to which the bills related, had been turned over to and had been accepted by the corporations and the Government hence had no longer any interest in the controversy. As the result of submitting an inquiry to counsel as to whether the cases had become moot, that result is admitted by the United States, but in a measure is disputed by the appellants for the following reasons: First, it is said that as the taking over of the lines by the President was wholly unwarranted and without any public necessity whatever, there is ground to fear that they may again be wrongfully taken unless these cases now proceed to a decree condemning the original wrong; and second, that although it is true that during the operation of the property while under the control of the Government all the revenues derived from it were separately kept and have been returned to the owners of the property—a result which financially is satisfactory to them—nevertheless, unless there is a decree in this case, the owners can feel no certitude that the revenues may not be claimed from them by the United States in the future.

But we are of opinion that these anticipations of possible danger afford no basis for the suggestion that the cases now present any possible subject for judicial action, and hence it results that they are wholly moot and must be dismissed for that reason. In giving effect, however, to that conclusion, we are of opinion that the decrees below, which in substance rejected the rights asserted by the complainants, ought not to be allowed to stand, but on the contrary, following the well established precedents (*United*

*States* v. *Hamburg-American Co.,* 239 U. S. 466; *United States* v. *American-Asiatic S. S. Co.,* 242 U. S. 537), the decrees below should be reversed and the cases remanded to the lower court with directions to set aside the decrees and to substitute decrees dismissing the bills without prejudice and without costs, because the controversy which they involve has become moot and is no longer therefore a subject appropriate for judicial action.

*And it is so ordered.*