**GOODYEAR TIRE & RUBBER CO. v. FEDERAL TRADE COMMISSION.**

No. 7369.

Circuit Court of Appeals, Sixth Circuit.

Nov. 5, 1937.

with violation of section 2 of the Clayton Act (U.S.C.A., title 15, § 13), by discriminating in the price of tires between those sold in interstate commerce to Sears, Roebuck & Co., and those sold to independent Goodyear dealers, with the effect of lessening competition and tending to create a monopoly both in manufacture and distribution. After extended hearings, in which a great volume of testimony was taken, the respondent issued its order directing the petitioner to cease and desist from the condemned practice, whereupon on April 5, 1936, the petitioner filed in this court the present petition for review.

The controversy involves principally a challenged interpretation given by the Commission to section 2 of the Clayton Act. That section declares it to be unlawful to discriminate in price between purchasers of commodities where the effect of such discrimination may be to substantially lessen competition or tend to create a monopoly in any line of commerce, and contains the following proviso: "That nothing herein contained shall prevent discrimination in price between purchasers of commodities on account of differences in the grade, quality, or quantity of the commodity sold, or that makes only due allowance for difference in the cost of selling or transportation, or discrimination in price in the same or different communities made in good faith to meet competition."

The essential dispute in respect to the foregoing proviso is this: The petitioner contends that a discrimination in price is permitted if based upon the quantity of the commodity sold, and that a discrimination in price is also permitted that makes due allowance for difference in the cost of selling or transportation; that since its discrimination in favor of Sears Roebuck was approximately only 7 per cent. over and above a due allowance for difference in cost, it was not an unreasonable discrimination attributable to the great quantity of tires purchased by Sears Roebuck, that its effect did not substantially lessen competition, had no tendency to create monopoly, and so the petitioner did not offend against the statute. The Commission, however, contends that, while the proviso permits discrimination on account of differences in quantity of the commodity sold, such discrimination is limited to the saving in cost of selling or transportation, and that all differences in price beyond such saving threatens competition, tends to monopoly, and so violates the statute.

Grover Higgins, of Cleveland, Ohio (Newton D. Baker and H. Chapman Rose, of Cleveland, Ohio, on the brief), for petitioner.

Everett F. Haycraft and W. T. Kelley, both of Washington, D. C. (Martin A. Morrison, Pgad B. Morehouse, and James W. Nichol, all of Washington, D. C., on the brief), for respondent.

Before HICKS and SIMONS, Circuit Judges, and HAMILTON, District Judge.

SIMONS, Circuit Judge.

The petitioner is a manufacturer of automobile tires, and by respondent's complaint of September 13, 1933, was charged

The cease and desist order was entered on March 5, 1936. On June 19 of the same year the Congress enacted the so-called Robinson-Patman Act (49 Statutes 1526), whereby section 2 of the Clayton Act was amended (15 U.S.C.A. § 13) inter alia to provide "That nothing herein contained shall prevent differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery, resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered." It is agreed that the Robinson-Patman Act limits differentials to differences in cost on account of quantity, but the petitioner insists that this marks a change in the law, while the respondent contends it is mere clarification. The petitioner stands upon the language of the act and the history of the amendment, pointing among other facts to the Commission's final report on · chain store investigation filed December 14, 1934, wherein, in discussion of section 2 of the Clayton Act, it said: "Unless the price discrimination permitted on account of quantity shall make only due allowance therefor, section 2 of the Clayton Act may be readily evaded by making a small difference in quantity the occasion for a large difference in price. If the section is to have any vitality it must either be interpreted and enforced to that effect or it should be amended to that effect," and to reports of congressional committees to the effect that section 2 of the Clayton Act places no limit upon quantity differentials of any kind. The Commission's present view of the meaning of section 2 is that in the respect here indicated it requires neither amendment nor interpretation, for it asserts the proviso to be clear and unambiguous. For reasons presently to be discussed, we find it unnecessary to decide the question thus briefly indicated.

When the case reached the court for argument, we were informed that, when the Robinson-Patman Act became effective, the petitioner at once ceased to manufacture tires for Sears Roebuck under the terms of its existing contract, and shortly thereafter received notice of its cancellation. Since, however, a large stock of tires made under the agreement was on hand and could not at once be liquidated, the parties made a new price arrangement designed to conform to the new law, and advised the Commission of the price basis it was proposed to use. Within the year all transactions between the petitioner and Sears Roebuck ceased and obligations were terminated by mutual releases. These circumstances appearing, the court inquired whether an actual controversy between the parties remained to be decided. The original briefs, except for a note on that of the petitioner, were silent upon the possibly moot character of the controversy. Permission to file supplemental briefs ·on the point raised was immediately sought and granted, and these have now been carefully considered.

Petitioner and respondent alike urge decision upon the validity of the Commission's order. That they are in agreement upon the presence of an actual controversy is, however, of no importance, since no stipulation of parties or counsel can enlarge the power constitutionally conferred upon the courts. Richardson v. McChesney, 218 U.S. 487, 31 S.Ct. 43, 54 L.Ed. 1121; Lieutenant Stearns v. Wood, 236 U. S. 75, 35 S.Ct. 229, 59 L.Ed. 475; Security Life Insurance Co. v. Prewitt, 200 U.S. 446, 26 S.Ct. 314, 50 L.Ed. 545. It is the duty of the court to determine the limit of its own jurisdiction when any question concerning it presents itself, whether raised by counsel or sua sponte, for we are not empowered to decide moot or abstract propositions, or to declare for the government of future cases principles or rules of law which cannot affect the result as to the things in issue before us. California v. San Pablo & Tulare Railroad Co., 149 U.S. 308, 314, 13 S.Ct. 876, 37 L.Ed. 747; Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688.

However debatable may have been the validity of the Commission's order based upon its asserted interpretation of the section 2 proviso of the Clayton Act, and upon this we express no opinion, there is no controversy between the parties as to the illegal character of the petitioner's practices under the terms of the Robinson-Patman Act. To the mandate of the latter, the petitioner has bowed. So far as this case is concerned, it accepts without question both its validity and its application. It has consented to the abrogation of a very profitable contract involving millions of units and many millions of dollars, with all the dislocation and reorganization of manufacturing schedules that such substantial reduction in volume in all probability entails. However contumacious it may have been in respect to the original complaint, it now yields to what it conceives to be the certain expression of sovereign authority

without awaiting further complaint. The circumstance which compels its present practice is not of its own creation, but one beyond its power to control. In this situation we think the question as to the actuality of any present controversy between petitioner and respondent is ruled by United States v. Hamburg-Amerikanische, etc., 239 U.S. 466, 36 S.Ct. 212, 217, 60 L.Ed. 387.

In that case there was a combination of steamship lines alleged to be illegal under the Anti-Trust Act of July 2, 1890 (15 U. S.C.A. §§ 1–7, 15 note). The court held that, since the business in which the parties to the combination were engaged had by the force of events beyond their control ceased, and since any continued relation between the members of the combination had become unlawful and impossible owing to the World War, all question respecting its validity had become moot and beyond the power of the court to determine. Mere discontinuance of an unlawful practice by parties charged with violating the law will, of course, not relieve the court of the duty to pass upon a pending charge of illegality because by the mere volition of the parties the illegal practice may be resumed. United States v. Trans-Missouri Freight Ass'n, 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007; Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310. But these cases are by the court distinguished in the ruling case, where it is said, in reliance upon Mills v. Green, 159 U. S. 651, 16 S.Ct. 132, 40 L.Ed. 293: "But if the intervening event is owing to the plaintiff's own act or to a power beyond the control of either party, the court will stay its hand." Moreover, it is idle, we think, to urge that one who has voluntarily surrendered an activity so great as that required by the petitioner's contract with Sears Roebuck will of its own volition resume a practice now beyond preadventure condemned by law. Of course, the amendatory statute may be repealed, or invalidated. More likely was peace to end the World War and trans-Atlantic communication to be resumed. Of such expectation the court said: "It is urged, in view of the character of the questions and the possibility or probability that, on the cessation of war, the parties will resume or recreate their asserted illegal combination, we should now decide the controversies in order that by operation of the rule to be established any

attempt at renewal of or creation of the combination in the future will be rendered impossible. But this merely upon a prophecy as to future conditions invokes the exercise of judicial power not to decide an existing controversy, but to establish a rule for controlling predicted future conduct."

■■ As against the view that the controversy has become moot, both parties urge upon us section 2 of the Robinson-Patman Act (15 U.S.C.A. § 21a), which provides that rights of action, pending litigation, or orders in effect or pending on review based upon section 2 of the Clayton Act, shall not thereby be affected, and which permits the Commission, while its order is pending on review or is in effect as issued or modified by the court, to reopen its original proceeding and to modify or amend its original order to include additional violations of law, such modified or amended order to be subject to review and enforcement in the manner provided by the Clayton Act. This section further provides that, if the court sets aside the Commission's modified or amended order, the original order shall not be affected thereby, but shall remain in force and effect as fully and to the same extent as if the supplementary proceedings had not been taken. The history of the section indicates that it was added to the bill specifically to protect proceedings already taken in the instant case, in which many thousands of pages of testimony had been recorded and many months consumed in its hearing.

It is elementary, however, that statutory provisions, even if applicable, may not enlarge the constitutional grant of judicial power which extends only to cases of actual controversy. But section 2 of the Robinson-Patman Act does not by its terms command, nor by necessary implication require, our determination of a dispute whose actuality has ceased. It but provides for the reopening of proceedings begun originally under the Clayton Act for the purpose of examining acts, practices, or methods in violation of the amendatory act that have been committed or carried on since its effective date, and this notwithstanding the pendency of a review of its original order or its affirmance or modification by the court. Although sixteen months had elapsed between the effective date of the Robinson-Patman Act and the present hearing here, no supplementary proceedings have been taken, nor are we advised that any are in contemplation. The provi-

sion contained in the amendment that if upon review of a modified or amended order it is set aside, that the original order shall not be affected thereby but shall remain in force and effect, was certainly not intended to nor could it have the effect of preventing the court from reviewing it or from an appropriate disposition of it in the event that the controversy should have become moot. The real purpose of the amendment was represented upon the floor of the House to be to preserve the extensive record already made in the event that the present petitioner should refuse to comply with orders of the Commission made under the authority of the amendatory act, in which case supplementary proceedings could be had upon the original record and an amended order issue. Section 2 of the Robinson-Patman Act (15 U.S.C.A. § 21a) has no bearing upon the actuality of the issue presently urged, and our conclusion is that the controversy, notwithstanding its provisions, is moot.

In this situation it remains to be determined what should be done with reference to the cease and desist order made by the Commission. Following the reasoning of the Hamburg-Amerikanische Case, supra, and in response to authority controlling upon us, our decision must be based solely "upon determining what will be 'most consonant to justice' in view of the conditions and circumstances of the particular case."

Upon behalf of the petitioner it is urged that, since the cease and desist order is not the sole penalty for a violation of section 2 of the Clayton Act (15 U.S.C. A. § 13), but that under section 4 of that act (15 U.S.C.A. § 15) persons injured by such violations may recover threefold damages and attorney fees, disposition of the present case which would leave the existing order of the Commission unaffected would have for it serious practical results in the encouragement of litigation, though necessarily conceding the order not to control

such litigation under the doctrine of res judicata. More persuasive, however, is its contention in reliance upon the language of the Hamburg-Amerikanische Case, supra, wherein it was said: "We are of the opinion that the ends of justice exact that the judgment below should not be permitted to stand when, without any fault of the government [here the petitioner], there is no power to review it upon the merits, but that it should be reversed and the case remanded to the court below with directions to dismiss the bill without prejudice." Certainly there must be recognition of the fundamental injustice of permitting a decision to stand in circumstances in which the defeated party cannot secure its review upon the merits. Commercial Cable Co. v. Burleson, 250 U.S. 360, 39 S.Ct. 512, 63 L.Ed. 1030; Brownlow v. Schwartz, 261 U.S. 216, 43 S.Ct. 263, 67 L.Ed. 620.

On the other hand, the respondent urges that since at the oral argument the petitioner for the first time definitely stated that its contract with Sears Roebuck had been canceled and price discrimination stopped, that since there may be price discrimination without contract, and since the Commission's order was not directed to the cancellation of the contract but to unlawful discriminations, and there has been no examination into the practices of the petitioner since the effective date of the Robinson-Patman Act, and not sufficient opportunity for such investigation, appropriate disposition of the present case, based upon a conclusion that the controversy therein has become moot, is to dismiss the appeal without prejudice. We give consideration to both contentions when we set aside, as we do, the order of the Commission and remand the case, but without direction to the Commission to dismiss the complaint and without prejudice to its filing a supplemental complaint in the original proceeding if under section 2 of the amendatory act this may now be done, concerning which we express no opinion.

It is so ordered.