## UNITED STATES v. SOUTHERN PAC. CO.
### Civ. No. 2460.

District Court, D. Oregon.

Dec. 24, 1947.

Henry L. Hess, U. S. Atty., of Portland, Or., Samuel Karp, Sp. Asst. to Atty. Gen., Carl C. Donaugh, U. S. Atty., and J. Mason Dillard, Asst. U. S. Atty., both of Portland, Or., David S. Craig and James E. Kilday, Sp. Assts. to Atty. Gen., for plaintiff.

James C. Dezendorf, Koerner, Young, Swett & McColloch, Alfred A. Hampson and Hampson, Koerner, Young & Swett, all of Portland, Or., for defendant.

JAMES ALGER FEE, District Judge.

This cause was dismissed as moot. Utter confusion seems to exist in the minds of the attorneys as to the reasons which to the court were obvious.

This complaint was filed May 20, 1944. A pretrial order was drawn after conference, was endorsed by the parties and signed and placed of record on the 30th day of March, 1945. This cause has been called by the court eight times since that date. About July 24, 1946, the attorney for the defendant reported the Assistant Attorney General in charge of the case requested the court to set the cause between Christmas, 1946, and New Year's Day, 1947. This request was treated as seriously as its nature deserved. Neither of the parties made any attempt to set the cause for hearing. Upon call by the court on the 7th day of July, 1947, postponement was again requested and granted. At any time during the last two years therefore the cause could have been dismissed for failure to prosecute.

During the time this cause has been upon the docket of this court, from the 20th day of May, 1944, to the 17th day of November, 1947, the situation in regard to transportation on the west coast has undergone vast and indeed revolutionary changes. The parties have never been content to try this cause upon the relevant issues of law and fact, but from the beginning have sought

to inject political and social issues into the field. The court segregated these issues in the pretrial order and held over objection and exception of the government that these issues were not relevant to the controversy outlined in the complaint and the pretrial order herein entered. It is the opinion of the court that in so far as such considerations affect the situation these should not be considered primarily by this court. The transportation system of the entire west coast and the welfare and economic claims of the transportation companies, the public, and the communities and localities affected, should be balanced by the Interstate Commerce Commission. No attempt to secure this primary consideration from the administrative body was made. The only administrative order was that by the Office of Defense Transportation. This order required the Southern Pacific to operate only the facilities which the record shows it actually did operate, at the time.

But we return to the case here. The parties in pretrial conference agreed that there were three issues, as follows:

"Issues of Law

"I. Does the Act of Congress of July 25, 1866 (14 Stat. 239), require the operation by Defendant of trains for through passenger service between Portland, Oregon, and Roseville, California, over the Siskiyou line?

"II. If the answer to I is in the affirmative, is the Defendant now rendering the through passenger service required by said Act?

"III. If the answer to I is in the affirmative and the answer to II is in the negative, does General Order ODT 24 defeat the right of the Plaintiff to a decree in its favor?"

The court approved this statement of the issues by signing the order.

The controversy arose over the following situation which is described by the agreed facts in the pretrial order:

"XVI. From 1938 to January, 1942, Defendant operated one passenger train per day from Portland, Oregon, to Ashland, Oregon, and return and one train per day from San Francisco, California,

to Grants Pass, Oregon, and return. In January, 1942, the daily train between San Francisco, California, and Grants Pass, Oregon, was discontinued north of Dunsmuir, California. To replace the discontinued passenger service between Grants Pass, Oregon, and Dunsmuir, California, a distance of approximately 153 miles, bus operation guaranteed by the Defendant is provided by Pacific Greyhound Lines, a corporation engaged solely in motor bus operation, through two schedules per day between Ashland, Oregon, and Dunsmuir, California, southbound and three schedules per day northbound, on which schedules rail tickets are honored. Defendant owns approximately 39% of the common stock of Pacific Greyhound Lines.

"XVII. From 1927 to the present time Defendant has operated and now operates through passenger service between Portland, Oregon, and San Francisco, California, over the Cascade Line.

*     *     *     *     *     *

"XX. On September 30, 1942, the Office of Defense Transportation, and the Director thereof, pursuant to the authority and power given and conferred by Executive Order No. 8989, promulgated and issued General Order ODT 24, which is still in full force and effect and which provides as follows:

*     *     *     *     *     *

" 'Section 500.41 *Passenger train operations restricted.* No rail carrier shall:

" '(a) Operate any passenger train schedule in addition to those which were operated during the week ending September 26, 1942' ".

When the court came to hear the cause, the parties, without asking that the previous order be set aside or for leave to file a supplemental pleading and without a further pretrial conference, passed up a proposed form of amended pretrial order which contained the following stipulations of fact:

"XVI. * * * On October 6, 1945, Defendant established a daily train from Grants Pass, Oregon, to Dunsmuir, California, the passenger car of which train was handled from Dunsmuir, California, to San Francisco, California, on a train of Defendant operated between said points,

338

and established a daily train from Dunsmuir, California, to Grants Pass, Oregon, the passenger car of which train was handled by Defendant from San Francisco, California, to Dunsmuir, California, on a train of Defendant operated between said points.

"XVII. On March 1, 1946, Defendant established daily through Pullman car service between San Francisco and Grants Pass and operated the same together with the through coach car between said points on schedule, as set forth in Defendant's Exhibit 2 for Identification. Said Pullman car is one containing sections, compartments and a drawing-room, and is air-conditioned. North of Dunsmuir, said Pullman car and coach (along with a cafe lounge car and such other cars as the traffic on said train require) are handled by a local train (designated as Nos. 7 and 8) between Dunsmuir and Grants Pass, which operates in connection with Train No. 14 northbound and in connection with Train No. 19 southbound, all as set forth in said Defendant's Exhibit 2 for Identification."

The court accepted these recitals as admissions of fact in open court.[1] Thereupon the cause was dismissed as moot. The admissions show that the situation has entirely changed since the pretrial order was entered. This pretrial order contains the recital that it shall govern the issues and shall not be amended except by consent or to prevent manifest injustice. Of course, the court must consent to make the amendment of the order if there is to be one. Therefore, the cause came on for trial or hearing on this order. If we consider the

issues in inverse order we find that the issues have been determined by facts admitted in open court. The order of Office of Defense Transportation is no longer available as a defense to Southern Pacific Company. Since the war is no longer being waged the order is of no effect and furthermore, does not presently apply to the facts.[2]

Second. The Southern Pacific Company is no longer operating a bus line from Ashland to Dunsmuir but is operating cars which run on this very line from Portland to Medford and from Medford to Roseville (now Davis), California. Therefore, there is no longer in existence any question whether train to Grants Pass (or Ashland), bus line to Dunsmuir and train to Davis satisfied the requirements of the statute or not. There are now entirely different facilities. Therefore, this question is moot.[3]

■ Third. If it is intended by this question to test the operation outlined in the pretrial order, the answer is given above. If, on the other hand, it is intended to ask the question in a vacuum, the answer based thereon would be advisory. The decision of an issue of law which has no facts upon which it can be based is advisory and the custom of courts of the United States has been to refuse to decide such issues. Finally, if an attempt is made to require the court to answer these questions when the Southern Pacific is not only operating trains direct from Portland to San Francisco and return over the Cascade Route, but also from Portland to Ashland and return, and from Grants Pass to San Francisco and return over the Siskiyou

1 Compare In re Fox West Coast Theatres, D.C., 25 F.Supp. 250; 9 Cir., 88 F.2d 212; 301 U.S. 710, 57 S.Ct. 944, 81 L. Ed. 1363; 302 U.S. 772, 58 S.Ct. 7, 82 L.Ed. 598.

2 Revoked Sept. 16, 1945, 10 F.R. 11365. This case is entirely different from Southern Pac. Terminal Co. v. Interstate Commerce Commission, 219 U. S. 498, 31 S.Ct. 279, 55 L.Ed. 310. There the order of the administrative body denounced acts in which the company still persisted but it was claimed the case was moot because the order had expired by its own limitation of time. Here the order of the administrative body has expired but that order validated the action of the Southern Pacific in running a bus line in place of a train. The Southern Pacific now operates train service which no administrative body has denounced.

3 United States and Interstate Commerce Commission v. Alaska S. S. Co., 253 U.S. 113, 40 S.Ct. 448, 64 L.Ed. 808; California v. San Pablo & T. R. Co., 149 U.S. 308, 13 S.Ct. 876, 37 L.Ed. 747; Commercial Cable Co. v. Burleson, 250 U. S. 360, 39 S.Ct. 512, 63 L.Ed. 1030; United States v. Hamburg-American Co., 239 U.S. 466, 36 S.Ct. 212, 60 L.Ed. 387; Glass v. Ickes, App.D.C., 107 F.2d 259; Dakota Coal Co. v. Fraser, Adjutant General, 8 Cir., 267 F. 130.

Route, then there must be a new lawsuit based upon an entirely different set of pleadings. If the court had decided all the issues raised on the original pleadings and the pretrial order, as to the adequacy of a bus service as a substitute for train service, that would have not precluded a new lawsuit concerning the adequacy of a train service to meet the demands of the statute.

The great difficulty with this case is that there has been an entire disregard of the necessity of clearly presenting the issues of the case. There is nothing technical about this requirement. In order for the trier of the facts to determine what questions are to be settled, there must somewhere be a selection of the points in controversy. This is accomplished by pleading and by incorporation of the issues in a pretrial order. Here a definitive pretrial order was drawn after a pretrial conference. The court did not hold a pretrial conference at any time after the pretrial order was drawn. No motion was presented to set that order aside.

■ It is a cardinal rule in all courts and tribunals that the filing of an action fixes the controversy. In no system of pleading can after occurring events be litigated except by filing of a supplemental pleading by consent of court.[4] The original pleadings in this case and the pretrial order raised only issues relating to the substitution of bus service between Grants Pass and Dunsmuir for train service.

■ Here, although there were subsequently occurring events which completely changed the situation according to the admissions of the parties no motion was ever made to file a supplemental pleading. Indeed, the United States insistently relies upon the original pleadings. If a motion to file a supplemental pleading had been filed it must have been denied.[5] A new and distinct lawsuit should never be injected into a case by filing a supplemental pleading.[6] This rule is inherent in all systems of pleading, common law, code or fed-

eral. It is required by the necessities. Confusion would otherwise result. Here the previous discussion shows that subsequent events raised entirely new and different issues for determination. Whether the court would ever by mandatory injunction require a railroad to operate its facilities *in accordance with some notion the court had acquired from the evidence which the parties chose to introduce* would be questionable. The court has not the technical knowledge to outline such a decree.

Finally the statute and contract require the Southern Pacific "to operate and use the portions or parts of said railroad and telegraph mentioned in section one of this act for all purposes of transportation, travel and communication, so far as the government and public are concerned, as one connected and continuous line." There may have been a serious question as to whether the operation of a bus as a portion of its facilities complied with this section. It would be puerile to discuss the compliance by the operation of trains, without regard to the social and economic situation.

■ As to the larger questions of whether the Southern Pacific is fulfilling its obligation to the public this court has already been admonished that in considering the use of transportation facilities, "It is not true, * * *, that '* * * the courts must in a litigated case, be the arbiters of the paramount public interest'." United States v. Pierce Auto Lines, 327 U.S. 515, 535, 66 S.Ct. 687, 698, 90 L.Ed. 821.

This court certainly should heed the warning here where both parties apparently attempt to present political and economic issues for decision in a transportation case. If there is a lawsuit here, it is an entirely different one than that which was commenced on May 20, 1944. If there is a controversy justiciable in this court on presently existing facts, another case can be initiated. Such a cause could be decided without the heavy weight of incumbrance of past derelictions. The cause should not

[4] Ebel v. Drum, D.C., 55 F.Supp. 186; Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c; Landau v. Wolverine Hotel Co., D.C., 33 F.Supp. 705; F.R.Civ.Proc.

[5] General Investment Co. v. Lake Shore & M. S. R. Co. et al., 260 U.S. 261, 43 S.Ct. 106, 67 L.Ed. 244; Equity Rule 34, 28 U.S.C.A. § 723 Appendix.

[6] Cf. Southern Pac. Co. v. Conway, 8 Cir., 115 F.2d 746.

be compelled as was the ghost of Scrooge's partner Marley in "A Christmas Carol", to drag behind the chain of dead events.

The case is dismissed without prejudice to the right of the United States.