**Paul N. HALVONIK et al., Plaintiffs-Appellants,**

v.

**Ronald REAGAN and Frank Madigan, Defendants-Appellees.**

**No. 24970.**

United States Court of Appeals, Ninth Circuit.

Feb. 9, 1972.

Charles C. Marson (argued), Paul N. Halvonik, in pro. per., San Francisco, Cal., for plaintiffs-appellants.

John T. Murphy, Deputy Atty. Gen. (argued), Evelle J. Younger, Albert W. Harris, Jr., Asst. Attys. Gen., Richard J. Moore, Alameda County Counsel, T. J. Fennone, Deputy County Counsel, San Francisco, Cal., for defendants-appellees.

Before JERTBERG and MERRILL, Circuit Judges, and KELLEHER, District Judge.*

MERRILL, Circuit Judge:

In early 1969, the City of Berkeley had become the setting for acts of vio-

* Honorable Robert J. Kelleher, United States District Judge for the Central District of California, sitting by designation.

lence and disorder, with attention focusing on a piece of unimproved land within the City owned by the University of California, which, in course of time, became popularly known as "People's Park." On February 5, 1969, appellee Reagan, as Governor, determined that a state of extreme emergency existed in the City. This determination, under California law, § 1581 California Military and Veterans' Code, authorized the Governor to exercise, within the designated area, all police powers vested in the state and to "promulgate, issue and enforce rules, regulations and orders which he considers necessary for the protection of life and property."

On May 15, 1969, a riot occurred when four companies of highway patrol officers stationed on the property were confronted by a mob estimated at more than 2,000 persons. Property damage and personal injury resulted. That evening, in response to a request by Berkeley officials, appellee Reagan promulgated the regulations here in question:

"1. No person shall loiter in or about any public place in the City of Berkeley including the campus at the University of California between the hours of 10 P.M. and 6 A.M. of the following day.

2. No person shall conduct or participate in a meeting, assembly or parade or use a voice or sound amplifier in or upon the public streets or highways or other public places in the City of Berkeley including the campus of the University of California."

On May 19 this suit was brought by four Berkeley citizens, challenging the constitutionality of the regulations and seeking injunctive and declaratory relief. A temporary restraining order was denied, but an order was entered directing that cause be shown on May 26, 1969, why a temporary injunction should not issue.

On May 22, 1969, the disputed regulations were rescinded and less restrictive regulations were issued in their stead.[1] On May 24, order appearing to have been restored, the substitute regulations were rescinded. Accordingly, since nothing remained to be enjoined, at the May 26 hearing a temporary injunction was denied.

On June 9, 1969, appellees moved to dismiss the suit on the ground that "the claim for declaratory relief presents no case nor controversy and the complaint for injunctive relief is moot."

On June 29, appellants attempted to amend their complaint to include as plaintiffs persons arrested and awaiting prosecution for violation of the disputed regulations. Prior to the hearing on the motion to dismiss, all criminal charges were dismissed. On August 15, 1969, following hearing, the suit was dismissed by court order on the ground that it had been rendered moot. This appeal followed.

Contending that the regulations of May 15 unduly restrained freedom of movement and assembly and of speech, appellants challenged the regulations in several specific respects.

1. That in proscribing "loitering" the regulations are impermissibly vague.

2. That they are overbroad in:

(a) Geographically encompassing the whole of the City of Berkeley when a lesser geographical area was, in fact, involved.

(b) Banning all assemblies without regard to whether they are peaceable.

1. The area involved was reduced from the whole of the City of Berkeley to that bounded by Hearst Avenue, Grant Avenue, Derby Street, Gayley Road and Piedmont Avenue. "Loiter" was defined as "standing or roaming about on public property without any purpose or legitimate business." Scheduled classes at the University and recreational activities of school students were excepted from the prohibition against meetings, and assemblies on the University campus were permitted when approved by the Chancellor.

(c) Banning all use of loudspeakers without regard to volume of noise or content of speech.[2]

■ Where the allegedly unlawful conduct has terminated, the party seeking a determination on the merits must establish that the case nevertheless has not been rendered moot; that controversy and adversity between the parties nevertheless continues. To do so he must show the likelihood of a recurrence of the conduct—in this case the promulgation of the regulations. *See, e. g.* Hall v. Beals, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969); Bus Employees v. Wisconsin Board, 340 U.S. 416, 71 S. Ct. 373, 95 L.Ed. 389 (1950); Oil Workers Local 8–6 v. Missouri, 361 U.S. 363, 80 S.Ct. 391, 4 L.Ed.2d 373 (1960).[3]

Contending that they have done so, appellants argue (1) that while the regulations have been rescinded, the statute authorizing their issuance still exists; (2) that here, as in Southern Pacific Terminal Company v. Interstate Commerce Commission, 219 U.S. 498, 31 S. Ct. 279, 55 L.Ed. 310 (1911), while specific regulations promulgated in the future may differ from those involved here "the question involved in the [regulations] are * * * usually continuing," 219 U.S. at 515, 31 S.Ct. at 283, and resolution of them would bear upon future regulation; (3) that the state persists in arguing that the regulations

were valid, indicating likelihood of recurrence; (4) that the timing of the rescinding of the regulations and dismissal of criminal charges gives rise to an inference of bad faith; (5) that to reject judicial review of the regulations here would enable the state freely to entrench upon constitutionally protected liberties without hindrance.

In our view this does not suffice under the circumstances of this case.

Authorities on which appellants rely are readily distinguishable; recurrence of regulation here is not foreseeable for the reasons there presented. We do not have here an agency created for the very purpose of regulation as in Southern Pacific Terminal Company v. Interstate Commerce Commission, *supra*. We are not faced with a challenged practice imprinted into law by statute, as in Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969); Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963), or by judicial decision as in Carroll v. Princess Anne, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968).

Here we are faced with regulations triggered by emergency and dependent upon the occurrence of extraordinary events rather than arising in the normal course of regulation.

Further, the challenge to regulation is a narrow one. The issue is not the right to regulate in a certain fashion in

2. Although we do not pass on the merits of these contentions for the reason outlined hereinafter, our disposition of the case is not a negative reflection on the substantiality of plaintiffs' claim. The constitutionality of "loitering" statutes has awakened judicial concern on past occasions. *See,* Territory of Hawaii v. Anduha, 48 F.2d 171 (9th Cir. 1931); Ricks v. District of Columbia, 134 U.S. App.D.C. 201, 414 F.2d 1097; Baker v. Binder, 274 F.Supp. 658 (W.D.Ky. 1967); Goldman v. Knecht, 295 F.Supp. 897 (D.Colo.1969); Scott v. District Attorney, 309 F.Supp. 833 (E.D.La.1970); Gordon v. Schiro, 310 F.Supp. 884 (E.D. La.1970). Further, courts have not been slow to scrutinize narrowly a variety of restraints on First Amendment freedoms, where "over-breadth" is properly in issue.

Hague v. C. I. O., 307 U.S. 496 (1939); Carroll v. Commissioner of Princess Anne, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968); United States v. Robell, 389 U.S. 258, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967); Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); Coates v. City of Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1970).

3. He must also show that recurrence would precipitate a dispute between the same parties. *See, e. g.,* Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); Commercial Cable Co. v. Burleson, 250 U.S. 360, 39 S.Ct. 512, 63 L.Ed. 1030 (1919). This would seem to have been done here. The interest asserted here is that common to all residents of Berkeley.

the interests of order, but the existence of alternatives of lesser restraint, which, under the particular circumstances, would adequately serve to protect life and property. It is the extremity of disorder in a particular case which will largely determine whether suitable alternatives exist.

The state has indicated a readiness to temper the breadth of its regulations to the extremity of the disorder. The challenged regulations of May 15 were in effect only for a few days during the height of the turmoil. In judging the likelihood of recurrence of such regulation, we must then assess the likelihood that such an extreme of violence as occurred on May 15 will reoccur. We cannot escape the conviction that this is not so likely as to constitute a continuing controversy of present immediacy and reality between the state and people of Berkeley.

■ Accordingly we find no error in the determination of the District Court that this case has been rendered moot.

Affirmed.