

**Decided December 18, 1980**

IN THE DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| MARIAÑAS FISHERIES, INC., et al., | ) ) ) | CIVIL CASE NO. 79-031 |
| Plaintiffs, | ) ) | |
| vs. | ) ) | MEMORANDUM OF DECISION |
| JUANITA M. KREPS, et al., | ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OF DECISION

I. DEFENDANTS' MOTION TO DISMISS: PROCEDURAL BACKGROUND

On August 19, 1980, the defendants herein moved for a dismissal of this action on the grounds of lack of jurisdiction and absence of a justiciable case or controversy. Among other reasons argued for dismissal, defendants asserted that Presidential Proclamation 4726 of February 21, 1980, 45 Fed. Reg. 12369-12371 (1980), mooted the causes of action stated in plaintiffs' complaint. On October 2, 1980, the plaintiffs filed a memorandum in opposition to defendants' motion, contending in part that the aforesaid Proclamation did not moot the issues raised in their complaint, and that the case continued to present a justiciable case or controversy of which the plaintiffs had standing to prosecute in this Court.

107

Defendants filed a memorandum in response to plaintiffs' memorandum on October 16, 1980. Plaintiffs filed a supplemental memorandum in opposition to the motion to dismiss on October 21, 1980. This was followed by a supplemental memorandum filed by the defendants on October 30, 1980, in which the Court was informed that the M/V Olwol, the subject vessel named in the complaint, was registered with the United States Coast Guard on October 21, 1980.[1] Plaintiffs filed on November 7, 1980 a second supplemental memorandum in opposition to defendants' motion to dismiss. In response thereto, defendants filed a second supplemental memorandum on November 17, 1980. The motion came on for hearing on November 19, 1980. On November 21, 1980, the Court entered an Order granting defendants' motion, reserving for future filing its statement of reasons for its decision.

The following is the Court's memorandum of decision.

## II. JURISDICTION AND VENUE

Before addressing the merits of this motion it is necessary to answer the defendants' contention that the District Court for the Northern Mariana Islands is without jurisdiction of this case.

Section 311(d) of the Fisheries Conservation and Management Act (also referred to herein as the "Act"), 16 U.S.C. § 1861(d), provides that:

> The district courts of the United States shall have exclusive jurisdiction over any case or controversy arising under the provisions of this Act. In the case of Guam, and any Commonwealth, territory, or possession of the United States in the Pacific Ocean, the appropriate court is the United States District Court for the District of Guam, except that in the case of American Samoa, the appropriate

--- --- --- --- --- --- --- ---

[1] A certified copy of the certificate of registry was attached to defendants' memorandum as Exhibit "I".

court is the United States District
Court for the District of Hawaii...

Pub. L. 94-265, Title III, § 311, Apr. 13, 1976, 90 Stat. 358,
(Effective date Mar. 1, 1977, see Section 312 of Pub. L. 94-265).

March 1, 1977, the effective date of Section 311(d) of the Fisheries Conservation and Management Act, anteceded January 9, 1978, the date on which the District Court for the Northern Mariana Islands came into full force and effect (see Presidential Proclamation No. 4534, Sections 1 and 2 [42 Fed. Reg. 56593, October 24, 1977]; 48 U.S.C.A. § 1694d). In construing the language of Section 311(d), the Court finds that that statement "the appropriate court" for any "Commonwealth, territory, or possession of the United States' is the "United States District Court for the District of Guam" was not intended to divest the district courts of the United States of their jurisdiction as provided in that section, but rather was intended to describe the court in which venue was then most appropriately laid. At the time Section 311(d) of the Act became effective, there was no functioning district court in the Northern Mariana Islands. Nor was the Northern Mariana Islands functional as a Commonwealth in Political Union with the United States of America. For these reasons, the general provisions pertaining to the venue of district courts provided in 28 U.S.C. § 1391(e) more appropriately apply in this case. There can be no doubt that under the provisions of that Section,[2] venue is properly laid in this Court.

- - - - - - -

[2]  28 U.S.C.A. § 1391(e) provides in applicable part:

> (e)  A civil action in which a defendant is an officer or employee of the United States or an agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant is the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party.

Jurisdiction over this case is otherwise obtained pursuant to 28 U.S.C. § 1331(a), Article IV, Section 402(a) of the Covenant to Establish a Commonwealth in Political Union with the United States of America (the Covenant), 48 U.S.C. § 1694a(a), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

## III. MOOTNESS

Rule 12(h)(3) of the Federal Rules of Civil Procedure provides that "(w)henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

The subject matter jurisdiction of federal courts, and the federal jurisdiction of this court,[3/] originates in Article III, Section 2 of the United States Constitution. The inability of federal courts "to review moot cases (is also derived) from the requirements of Article III of the Constitution, under which the exercise of judicial power depends upon the existence of a case or controversy." Liner v. Jafco, Inc., 375 U.S. 301, 306 n. 3, 84 S.Ct. 391, 394, 11 L. Ed.2d 347 (1964).[4/] The requirement of a "case or controversy" fully applies to an action for declaratory relief. Super Tire Engineering Co. v. McCorkle, 416 U.S. 115, 94 S.Ct. 1694, 40 L. Ed.2d 1 (1974); 28 U.S.C. § 2201.

The dispositive issue in this motion is whether Presidential Proclamation 4726 coupled with the registration of the M/V Olwol has mooted the causes of action stated in plaintiffs' complaint. The resolution of this issue is, as a matter of law, dependent on whether the defendants have carried their burden of demonstrating that there is no reasonable expectation that the suspension of the Fisheries Conservation and Management Act will be withdrawn prior to the termination of the Trusteeship,[5/] or that the M/V Olwol will be otherwise prevented by the United States from fishing in Northern Marianas waters. United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L. Ed. 1303 (1953), reaffirmed United States v. Concentrated Phosphate Export Association, 393 U.S. 199, 202-204, 89 S.Ct. 361, 363-364, 21 L. Ed.2d 344 (1968).

It is well-settled that a Presidential Proclamation can moot a case. See, e.g. Commercial Cable Co. v. Burleson, 250 U.S. 360, 63 L. Ed. 1030 (1919). In this case, it is clear that Proclamation 4726 has done so. In their complaint, plaintiffs prayed for a judgment declaring that the Fisheries Conservation and Management Act of 1976 is not applicable to the Commonwealth of the Northern Mariana Islands or its surrounding waters, and for an order enjoining the defendant from enforcing any provision of the Act. Paragraphs one (1) through four (4) of Proclamation 4726 effectively

- - - - - - - - - -

5/ While the Constitution of the Northern Mariana Island and most provisions of the Covenant are presently in effect in the Northern Mariana Islands, the Trust Territory of the Pacific Islands continues to exist as the official governing body of the Northern Mariana Islands until termination of the Trusteeship agreement. See 48 U.S.C. § 1681 et seq; Department of Interior Secretarial Order 2989; Article X of the Covenant, and Schedule on Transitional Matters, Constitution of the Northern Mariana Islands.

suspend the Act for all purposes until termination of the trustee-ship.[6/] It has the same effect as a declaratory judgment from the court would have in declaring that the Act is not applicable in the Northern Mariana Islands for the duration of the trustee-ship.

A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L. Ed.2d 491 (1969). Proclamation 4726 has mooted the issues presented in this case.

- - - - - - - - - - -

6/ Proclamation 4726 states in part as follows:

> 1. Any provision of the vessel documentation laws of the United States which prevents the citizens of the Northern Mariana Islands or the Government of the Northern Mariana Islands from using foreign-built, United States registered fishing vessels, owned by such citizens or owned by or in the custody of the Government of the Northern Mariana Islands, to fish in the territorial sea and fishery conservation zone around the Northern Mariana Islands and to land their catch of fish in the Northern Mariana Islands... would be inconsistent with the objectives of the Trusteeship Agreement to the extent it has this effect.

> 2. The application of any such provision to foreign-built, United States registered fishing vessels owned by citizens of the Northern Mariana Islands or owned by or in the custody of the Government of the Northern Mariana Islands, is suspended to the extent it is inconsistent as described in Section 1 above until the termination of the Trusteeship Agreement for the Former Japanese Mandated Islands in the Pacific [61 Stat. 3301]. Foreign-built fishing vessels owned by citizens of the Northern Mariana Islands or owned by or in the custody of the Government of the Northern Mariana Islands may therefore be registered under R.S. 4132, as amended, 46 U.S.C. 11, and any restrictive endorsement upon such register, prescribed by 46 CFR 67.63-9(b) pursuant to 46 U.S.C. 11, shall be without effect insofar as it would prevent the citizens of the Northern Mariana Islands or the Government of the Northern Mariana Islands from using foreign-built, United States registered fishing vessels owned by such citizens or owned by or in the custody of the Government of the Northern Mariana Islands to fish in the territorial sea and fishery conservation zone surrounding the Northern Mariana Islands and to land their catch of fish in the Northern Mariana Islands.

Section 1004(a) of Article X of the Covenant provides that:

> The application of any provision of
> the Constitution or laws of the United
> States which would otherwise apply to the
> Northern Mariana Islands may be suspended
> until termination of the Trusteeship Agree-
> ment if the President finds and declares
> that the application of such provision
> prior to the termination would be incon-
> sistent with the Trusteeship Agreement.

Although the defendants are not disabled by Proclamation 4726 or Section 1004(a) of the Covenant from enacting laws which may engender the same causes of action after termination of the trusteeship, such future possibilities are purely conjectural at this time, and do not now present any "live" issues justiciable in this Court. The Supreme Court has stated that the duty of a federal court "is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract proposition or to declare principles or rules of law which cannot affect the matter in issue in the case before it." Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L. Ed. 293 (1895).

The plaintiffs, however, assert that their causes of action challenge statutory and regulatory constraints that are "short-term orders, capable of repetition, yet evading review." The "repetition/evasion" doctrine is an important exception to the general principles of mootness, Southern Pacific Terminal Co. v. I.C.C., 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L. Ed. 310 (1911); Roe v. Wade, 410 U.S. 113, 125, 93 S.Ct. 705, 35 L. Ed.2d 147 (1973), and therefore requires further analysis by the court.

Apart from the automatic expiration of Proclamation 4726 at the termination of the trusteeship, plaintiffs suggest that Proclamation 4726 may be withdrawn at any time, and that this possibility is more imminent because of the election of President Reagan.

113

These speculations are not sufficient to overcome a finding of mootness. When events have permanently destroyed any possibility of repetition of the challenged law or conduct, the case is moot. Board of School Commissions v. Jacobs, 420 U.S. 128, 129, 95 S.Ct. 848, 43 L. Ed.2d 74 (1975); DeFunis v. Odegaard, 416 U.S. 312, 317, 94 S.Ct. 1704, 40 L. Ed.2d 164 (1974). Similarly, when the chance of repetition is remote and speculative, a court is without jurisdiction. SEC v. Medical Committee for Human Rights, 404 U.S. 403, 406, 92 S.Ct. 577, 30 L. Ed.2d 560 (1972); Hall v. Beals, 396 U.S. 45, 49, 90 S.Ct. 200, 24 L. Ed.2d 214 (1969). The record in this case is devoid of anything other than the specter raised by plaintiffs, that Proclamation 4726 could cease to have effect at some indeterminate future date. However, "(t)he necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." United States v. W. T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 898, 97 L. Ed. 1303 (1953). Plaintiffs' fears are not enough.

In making its decision on evasion, the Court is required to examine a variety of factors such as the probability that a subsequent suit challenging the action will be brought, and the likelihood that it will reach appellate review. Williams v. Alioto, 549 F.2d 136 (9th Cir. 1977), citing DeFunis v. Odegaard, 416 U.S. at 319, 94 S.Ct. 1704. In the unlikely event that Proclamation 4726 is withdrawn or vacated, or if plaintiffs otherwise interfere with the right of the M/V Olwol to fish in the waters of the Northern Mariana Islands prior to termination of the trusteeship, there is no reason to suppose that a subsequent case attacking the validity of defendants' actions will not come with relative speed to this Court. See DeFunis v. Odegaard, 416 U.S. at 319, 40 L. Ed.2d at 170 (1974).

114

Considering the course of events which has transpired since this motion was filed, however, the Court finds that it is at the present time without jurisdiction of the subject matter. While it is not easily persuaded by the proposition that because defendants are public officials they are more likely to avoid claimed illegalities in the future [see, e.g. 13 Wright and Miller, Federal Practice and Procedure, Mootness, § 3533, at 283 (1975), citing Blackwell v. Thomas, 476 F.2d 443 (4th Cir. 1973)]., the Court nevertheless recognizes that efforts are being made in good faith by the governments of the Northern Mariana Islands and the United States to resolve some of the complex questions arising out of commercial fishing in the waters surrounding the Commonwealth.[7] Representatives of the United States have endeavored to enact legislation which would permit foreign-built vessels such as the M/V Olwol to fish in the Northern Mariana Islands. H.R. 5681, 96th Congress, 1st Sess. (1979). Further, there has been appointed a commission on federal laws as mandated by Section 504 of the Covenant whose functions include a survey of the laws which should be made applicable to the Commonwealth after termination of the trusteeship, with appropriate recommendations to the United States Congress pursuant thereto. The effect of the commission's recommendations on the applicability of such laws as the Fisheries Conservation and Management Act remains to be seen, as is the question of whether any case or controversy would then arise out of the enactment of such laws. But these questions also belong to the indeterminate future, and create no cause of action ripe for adjudication by this Court.

- - - - - - - - - -

[7] At the request of the Governor of the Northern Mariana Islands, federal representatives met with representatives of the Northern Mariana Islands on February 21-22, 1980, in Hawaii to discuss fisheries problems and cooperative approaches to resolving fisheries questions. The correspondence in the record which resulted from that meeting indicates a spirit of cooperation between these governments.

115

In passing, the Court would like to point out that even as the Trusteeship enters its twilight years, those provisions of the Trusteeship Agreement for the Former Japanese Mandated Islands are still in full force and effect in the Northern Mariana Islands. Article 6, paragraph 2 of that Agreement provides that "(i)n discharging its obligations under Article 76(b)[8] of the Charter, the administering authority shall:

> 2. promote the economic advancement and self-sufficiency of the inhabitants, and to this end shall regulate the use of natural resources; encourage the development of fisheries, agriculture, and industries; protect the inhabitants against the loss of their lands and resources; and improve the means of transportation and communication... (emphasis supplied).

Twenty years ago it was judicially declared that the administering authority of the Trust Territory assumes an obligation under trust of protecting the inhabitants of that territory against loss of their lands and resources, promoting their well-being, and assuring their just treatment and protection against abuse, and that the administering authority is expected to show at least as careful consideration of the rights and properties of the inhabitants of the Trust Territory as it would for its own citizens in the same situation. Ngodrii v. Trust Territory, 2 T.T.R. 142 (1960). It is this Court's fervent hope that the same sense of trust will prevail upon those who assume like positions of authority as the curtain slowly rings down on the Trusteeship and rises on the Commonwealth.

- - - - - - - - - - -

8/ Article 76(b) of the Charter of the United Nations provides for the promotion of self-government for the inhabitants of trust territories.

116

DATED: Saipan, Northern Mariana Islands this _____ day of DECEMBER, 1980.

ALFRED LAURETA
Judge of the above-entitled Court

117